**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                )
RAYMING CHANG, *et al.*,         )
                                )
          Plaintiffs,            )
                                )
     v.                          )    Civ. Action No. 02-2010 (EGS)
                                )
UNITED STATES, *et al.*,         )
                                )
          Defendants.            )
_____)
_____
                                )
JEFFREY BARHAM, *et al.*,        )
                                )
          Plaintiffs,            )
                                )
     v.                          )    Civ. Action No. 02-2283 (EGS)
                                )
CHARLES H. RAMSEY, et al.,       )
                                )
          Defendants.            )
_____)


_____
                                )
FRANKLIN JONES, *et al.*,        )
                                )
          Plaintiffs,            )
                                )
     v.                          )    Civ. Action No. 02-2310 (EGS)
                                )
DISTRICT OF COLUMBIA, *et al.*, )
                                )
          Defendants.            )
_____)




_____

```
                              )
JULIE ABBATE, et al.,         )
                              )
          Plaintiffs,         )
                              )
     v.                       )    Civ. Action No. 03-767 (EGS)
                              )
CHARLES H. RAMSEY, et al.,    )
                              )
          Defendants.         )
_____)
```

### MEMORANDUM OPINION AND ORDER

This Memorandum Opinion and Order resolves pending motions for consolidation and class certification.

These four cases concern the events of September 27, 2002, when approximately 3000 to 5000 people joined in demonstrations in the District of Columbia protesting the policies of the World Bank, the International Monetary Fund, and the United States government. *See, e.g.*, Chang Compl. ¶¶ 33-34. On that date, all named and individual plaintiffs in these actions were at or near a demonstration taking place in General John Pershing Park ("Pershing Park"), located on Pennsylvania Avenue N.W. between 14th and 15th Streets N.W., when police officers surrounded them, along with approximately 400 other individuals who were in the Park, and arrested them.  *Id*. ¶¶ 12, 47-53. Plaintiffs allege that they were subsequently handcuffed and held on buses for up to 13 hours, and later detained at the Police Academy Gymnasium for periods ranging from 18 to 36 hours with one wrist cuffed to

the opposite ankle. *Id*. ¶¶ 12, 47-61.

Plaintiffs in all cases assert First, Fourth, and Fourteenth Amendment claims against the District of Columbia, alleging interference with protest, assembly, and journalism activities protected by the First Amendment, as well as violations of their Fourth Amendment right to be free of unreasonable searches and seizures. Additionally, plaintiffs in *Chang* and *Barham* assert common law claims of false arrest and false imprisonment against the District of Columbia. *Barham* plaintiffs also present an Equal Protection challenge to the District's alleged policy of offering only a "post and forfeit" option to those arrested in political demonstrations when a "post and trial" option, by which a detainee secures release without forfeiting any trial rights, is customarily offered to those arrested for other minor offenses. Certain individual plaintiffs in *Barham* assert conversion and trespass to chattel claims against the District based on seizure of their property, including video equipment, bags, and bicycles, at the time of their arrest. Finally, the *Chang* and *Barham* actions also name federal law enforcement agencies as defendants, seeking injunctive relief precluding those agencies from utilizing or participating in the challenged tactics.

All four actions seek common relief from the District of Columbia: entry of a judgment declaring the Metropolitan Police

3

Department's so-called "trap and arrest" policies and practices unlawful under the First and Fourth Amendments, entry of a permanent injunction prohibiting defendants from utilizing such tactics, an order sealing or expunging the arrest records of all individuals arrested in Pershing Park on September 27, 2002, and individual compensatory damages pursuant to 42 U.S.C. § 1983.

I.  **Class actions**

Two of the above-captioned cases were commenced as class actions in which the proposed class would include all persons arrested in Pershing Park on September 27, 2002. The first such action, *Barham v. Ramsey*, Civil Action No. 02-2253, asserts class claims against Secretary of the Interior Gale Norton in her official capacity, based on plaintiffs' allegation that federal law enforcement agencies actively participated in the challenged conduct. In addition, *Barham* raises claims against the Metropolitan Police Department ("MPD") and the District of Columbia, as well as against MPD Chief Charles H. Ramsey and District of Columbia Mayor Anthony A. Williams in both their individual and official capacities. The second putative class action, *Abbate v. Ramsey*, Civil Action No. 03-767, interposes class claims analogous to *Barham* plaintiffs' claims against the District of Columbia and Chief Ramsey in his individual capacity only, and seeks similar relief.

4

A.   *Consolidation*

District defendants move to consolidate these two putative
class actions on the grounds that both seek to assert class
claims based on the same events and transactions, and the "core
issues" raised by the *Abbate* action "plainly overlap" with some
of class claims presented by the *Barham* plaintiffs. They further
submit, citing to the *Manual for Complex Litigation*, that as a
general rule, a court should not certify more than one class
action where different proposed class representatives and their
counsel press competing claims. *See* Federal Judicial Center,
*Manual for Complex Litigation* at 219 (3d ed. 1995) ("Rarely
should more than one [class action] be certified, although under
appropriate circumstances subclasses may be considered.").
District defendants contend that consolidation of these cases
would serve the interests of judicial economy and reduce the
litigation burden on defendants, and ask the Court to direct
counsel for plaintiffs in *Barham* and *Abbate* to cooperate in the
filing of a single, consolidated amended complaint embracing the
class allegations common to both cases.

Consolidation is provided for by Fed. R. Civ. P. 42(a),
which states:

> When actions involving a common question of law or fact are
> pending before the court, it may order a joint hearing or
> trial of any or all the matters in issue in the actions; it

> may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

"The decision whether to consolidate cases under Rule 42(a) is within the broad discretion of the trial court." *Stewart v. O'Neill*, 225 F. Supp.2d 16, 20 (D.D.C. 2002). Generally speaking, when exercising their discretion with respect to consolidation of actions, courts weigh considerations of convenience and economy against considerations of confusion and prejudice. *Id*. Consolidation may increase judicial efficiency by reducing presentation of duplicative proof at trial, eliminating the need for more than one judge to familiarize themselves with the issues presented, and reducing excess costs to all parties and the government. *Id*. Consolidation is particularly appropriate where, as here, "two cases each involve review of the same underlying decision." *See Biochem Pharma, Inc. v. Emory University*, 148 F. Supp.2d 11, 12 (D.D.C. 2001).

Plaintiffs in both class actions oppose the motion for consolidation, although *Barham* plaintiffs do not oppose coordination of pre-trial and discovery matters in the two cases. Predictably, both groups of putative class representatives submit that it would be more expeditious to simply certify their class and deny the motion for class certification in the other case than to consolidate the two proposed class actions. *Barham*

plaintiffs argue that their action should be certified as a class action because it was the first filed, tolling any applicable statutes of limitation with respect to District defendants two months earlier than the *Abbate* action. Conversely, the *Abbate* case was filed nearly two months after *Barham*, wholly fails to toll the statute with respect to federal defendants, and asserts more limited claims against only the District of Columbia and its Chief of Police. *Barham* plaintiffs therefore contend that, at best, commencement of the *Abbate* action reflects a desire on the part of the five named plaintiffs in that case to opt-out of the broader claims presented by the *Barham* class.

*Abbate* plaintiffs respond by conceding that no more than one class action should be certified based on the events in question, but take issue with defendants' recommendation that they be required to "negotiate" with plaintiffs in *Barham* in order to file a single, consolidated class complaint. According to *Abbate* plaintiffs, "[t]his approach would severely prejudice plaintiffs' ability to represent the class in the manner that they think is best, as reflected in their complaint." They further state that it is "unnecessary and prejudicial to plaintiffs to require them at this stage to abandon their complaint and to negotiate a new one with the *Barham* plaintiffs," suggesting instead that the Court should simply decide which class should be recognized based

on which class action best represents the interests of the class to be certified.

Moreover, *Abbate* plaintiffs maintain that their action best serves the common interests of the class because it advances class members' interest in obtaining prompt and full compensation from and injunctive relief against the District and Chief Ramsey, the parties most directly responsible for their injuries. They further allege that, by adding federal defendants to their class action, *Barham* plaintiffs have assumed an additional burden of proof, which will lead to significant delays in the proceedings, without increasing or enhancing the compensation or injunctive relief available. In support of this contention, *Abbate* plaintiffs claim that any injunctive relief obtained against the District would necessarily reach any federal agencies or officers acting in concert with the MPD, thus effectively barring any law enforcement agencies operating within the District from engaging in the challenged practices. They further argue that any benefit to be gained by the *Barham* plaintiffs' assertion of *Bivens* claims against federal officers and FBI agents is minimal, and would not inure to the entire class. *Abbate* plaintiffs therefore contend that *Barham* plaintiffs' pursuit of additional federal defendants actually harms the interests of absent class members in obtaining full and prompt relief. Finally, they submit that certifying the

*Abbate* class action will not prejudice those plaintiffs who wish to proceed against the federal government or officers, as they would remain free to do so either in a separate class action or individually, and the statute of limitations for such an action would remain tolled by virtue of the filing of the *Barham* action.

Federal defendants also oppose the motion to consolidate, arguing that, at least as to them, the cases raise no common issues of fact or law, and consolidation would thus lead only to confusion with respect to which claims are asserted against federal defendants as opposed to District defendants. In the alternative, they ask that the Court first resolve their pending potentially dispositive motion before ruling on District defendants' motion to consolidate.[1]

Notwithstanding the concerns raised by the parties, the Court orally granted District defendants' motion to consolidate the *Barham* and *Abbate* actions at the conclusion of the hearing on pending motions held on September 11, 2003, with one significant

---

[1] The Court has also considered, and rejects, federal defendants' proposal that two class actions be certified, the first raising claims against federal defendants and the second focusing solely on District defendants. The Court believes no efficiencies would result from such an approach, as on the minimal record currently before it, including evidence submitted by federal defendants, it appears that the interactions and interrelationship between federal law enforcement agencies and the MPD will be of central importance to the litigation.

amendment -- the Court directed plaintiffs in *Abbate* and *Barham*
to file a single consolidated complaint joining *all* of the claims
raised in *both* cases. The Court believed that this approach,
rather than selecting from among the two competing class actions,
would ultimately best serve the interests of absent proposed
class members in vindicating their constitutional and common law
rights by enabling them to assert the broadest range of claims
against all alleged perpetrators of the harm claimed, while
benefitting from the wealth of talent brought by plaintiffs'
counsel in both cases. Furthermore, during oral argument on the
pending motions, plaintiffs' counsel in the *Abbate* case dispelled
any concerns regarding potential conflicts among the interests of
members of a consolidated class by assuring the Court and parties
that *Abbate* plaintiffs had no intention of contesting federal
defendants' liability for their injuries, but rather had simply
made a strategic decision not to pursue claims against those
defendants. The Court remains persuaded that consolidation would
not result in any undue delay in resolving claims against the
District. *Abbate* plaintiffs were unable to offer any persuasive
reason why the District claims would proceed any more quickly
than those against the federal government, given that the issues
raised by the claims against the District of Columbia are no less
complex than those presented by the federal claims. Furthermore,

the Court concluded that no one would be prejudiced through consolidation, as any plaintiff who absolutely wished to pursue the strategic approach vigorously advocated by *Abbate* counsel remained free to opt out of the class action and pursue claims against the District on an individual basis.

Far from rendering this litigation more unwieldy, consolidation would increase efficiency by reducing the possibility of duplicative discovery and by achieving judicial economy in the adjudication of potentially dispositive motions involving similar material facts, a single group of actors present during the events at issue, and common questions of law. Furthermore, in an effort to address plaintiffs' concerns that undue delay will result from consolidation of the two actions, an accelerated briefing schedule was put in place to ensure that the litigation proceeds apace.

Notwithstanding the Court's direction that counsel for plaintiffs in both cases make every effort to reach an agreement as to how to proceed with a consolidated class action that would best serve the interests of named plaintiffs as well as absent class members, it appears that the *Abbate* plaintiffs and their counsel remain unyielding in their approach. By letters dated September 15, 2003, plaintiffs' counsel in both *Barham* and *Abbate* advised the Court that they were unable to reach an agreement

with respect to a consolidated class action. Based on these letters, it appears that, rather than make a good faith effort to negotiate a way forward, *Abbate* plaintiffs merely persevered in their opposition to consolidation. While such inflexibility is unfortunate, in light of the parties' apparently entrenched positions, the Court will reconsider its decision to consolidate the two proposed class actions. Instead, it will pursue the alternative approach suggested by both *Barham* and *Abbate* plaintiffs, and provisionally certify the *Barham* case as a class action and treat *Abbate* plaintiffs as though they have opted out of the class and have elected to proceed individually against the District with more narrow claims. Forced to choose among the two competing class actions, the Court has selected the *Barham* action on the grounds that it best serves the interests of absent class members to certify the class asserting the broadest claims against the greatest number of allegedly responsible parties.

B.   *Class Certification*

It appears clear based on the record currently before the Court, and particularly the revelations contained in recently disclosed reports summarizing internal MPD investigations into the events of September 27, 2002,[2] that certification of a class

---

[2] These internal reports reveal that no order to disperse was ever given to those assembled in Pershing Park prior to their

of persons arrested in Pershing Park on that date is appropriate under these circumstances.[3]

In support of their effort to proceed as a class, *Barham* plaintiffs allege that approximately 400 persons were subject to mass arrest in Pershing Park on September 27, 2002, and therefore the class is too numerous for joinder. They further submit that their First, Fourth, and Fourteenth Amendment claims, as well as their common law false arrest and false imprisonment claims, present common questions of law and fact. *Barham* plaintiffs argue that, by arresting all persons found in the park on the morning in question without giving a lawful order to disperse or allowing class members to obey any such order, defendants engaged in a singular police action on grounds generally applicable to the class.  As a result, common questions of law and fact bearing on the alleged absence of probable cause justifying the ensuing

---

arrest for failure to obey a lawful police order, and that the individuals were arrested as a group without any individualized probable cause determinations. *See* Sep. 12, 2003 Order, Attachments.

[3] The Court is mindful that District defendants have sought an extension of time to respond to *Barham* plaintiffs' motion for class certification pending resolution of their motion for consolidation of the two proposed class actions. Accordingly, the Court will grant the motion for class certification in the *Barham* action on a provisional basis only, and afford the District defendants an opportunity to file a motion for reconsideration should they wish to do so.

arrests and detentions are the predominant questions presented. Moreover, all plaintiffs make similar allegations with respect to detention conditions, claiming that they suffered significant pain from excessively tight handcuffs, were held on buses for hours with their hands in cuffs, were taken to the gymnasium of the Institute for Police Science and handcuffed with one wrist attached to the opposing ankle for up to 36 hours, photographed, questioned by FBI agents, and deliberately misinformed of their rights. Plaintiffs therefore contend that the circumstances of arrest experienced by all class members were virtually identical, even though some individuals may have suffered additional injuries, such as deprivation of access to medication. Plaintiffs further maintain that these differences do not predominate, and can be addressed at the damages stage.

"It is, of course, well established that a principal purpose of the class-action mechanism is to advance the efficiency and economy of multi-party litigation." *McCarthy v. Kleindienst*, 741 F.2d 1406, 1410 (D.C. Cir. 1984). While certification of a class action pursuant to Fed. R. Civ. P. 23 is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only," class actions are

> "peculiarly appropriate" when the "issues involved are common to the class as a whole" and when they "turn on questions of law applicable in the same manner to each member of the class." For in such cases, "the class-action

14

device saves the resources of both the courts and the
parties by permitting an issue potentially affecting every
class member to be litigated in an economical fashion under
Rule 23."

*General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 155

102 S. Ct. 2364 (1982) (internal citations omitted). The party

seeking certification has the burden of demonstrating that all of

the requirements of Fed. R. Civ. P. 23 have been met,[4] and the

---

[4] The proposed class action must satisfy all four
prerequisites of Fed. R. Civ. P. 23(a):

One or more members of a class may sue or be sued as
representative parties on behalf of all only if (1) the
class is so numerous that joinder of all members is
impracticable, (2) there are questions of law or fact common
to the class, (3) the claims or defenses of the
representative parties are typical of the claims or defenses
of the class, and (4) the representative parties will fairly
and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Additionally, the class must satisfy one of the three
circumstances set forth in Fed. R. Civ. P. 23(b):

An action may be maintained as a class action if the
prerequisites of subdivision (a) are satisfied, and in
addition:

(1) the prosecution of separate actions by or against
individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect
to individual members of the class which would
establish incompatible standards of conduct for the
party opposing the class, or

(B) adjudications with respect to individual members of
the class which would as a practical matter be
dispositive of the interests of the other members not

Court has broad discretion when determining whether a particular action is worthy of certification. *McCarthy v. Kleindienst*, 741 F.2d at 1410; *Franklin v. Barry*, 909 F. Supp. 21, 30 (D.D.C. 1991). Prior to certifying a class, the Court must engage in a "rigorous analysis" of whether the proposed class action meets the requirements of Rule 23, and retains an ongoing obligation to do so throughout the litigation. *General Tel. Co. v. Falcon*, 457 U.S. at 161.

As an initial matter, this Court held in *Keepseagle v. Veneman* that

While Rule 23 does not formally require plaintiffs to prove

---

parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b).

> the existence of a class, some courts have found that "this is a common-sense requirement and . . . routinely require it." Neither the D.C. Circuit nor the Supreme Court has engaged in this additional step of the class certification analysis. Nevertheless, the Court is persuaded that some initial review of the proposed class is appropriate to ascertain whether "the general outlines of the membership of the class are determinable at the outset of litigation." This inquiry is one concerned with the court's ability to clearly identify and manage the class, and thus does not involve a "particularly stringent test."

*Keepseagle v. Veneman*, Civil Action No. 99-3119, mem. op. at 10-11 (D.D.C. Dec. 12, 2001) (citations omitted). It appears that plaintiffs easily satisfy this threshold requirement, as the contours of the class they seek to certify are easily ascertained by reference to the MPD's arrest records for September 27, 2002. *See Franklin v. Barry*, 909 F. Supp. at 30 (finding "identification of a class that is sufficiently definite such that it would be administratively feasible to determine whether a particular person is a member of the class."). Once the existence of a class has been established, the Court does not consider the merits of plaintiffs' claims prior to proceeding to a determination of whether the requirements for class certification set forth in Fed. R. Civ. P. 23 (a) and (b) have been met.

Plaintiffs bear the burden of demonstrating that all four of the requirements of Fed. R. Civ. P. 23(a) and one of the requirements of Fed. R. Civ. P. 23(b) have been satisfied. Fed. R. Civ. P. 23; *see, e.g.*, *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 613-14, 117 S. Ct. 2231 (1997); *In re: Veneman*, 309

17

F.3d 789, 792 (D.C. Cir. 2002); *Bynum v. District of Columbia*, Civ. A. No. 02-956, 2003 WL 21911342 at *1 (D.D.C. Aug. 11, 2003); *Lewis v. Nat'l Football League*, 146 F.R.D. 5, 8 (D.D.C. 1992).

> a)   Rule 23(a)(1) - Numerosity

It appears to be undisputed that the numerosity requirement set forth in Fed. R. Civ. P. 23(a)(1) is met in this case: plaintiffs have alleged, and defendants do not dispute, that approximately 400 people were arrested in Pershing Park on September 27, 2002 under virtually identical circumstances. *See Pigford v. Glickman,* 182 F.R.D. 341, 347-48 (D.D.C. 1998)("Plaintiffs have provided the names of four hundred and one named plaintiffs who they claim fall within the class definition. That alone is sufficient to establish numerosity, especially when the class members are located in different states."); *see also Coleman v. Pension Benefit Guar. Corp.*, 196 F.R.D. 193, 198 (D.D.C. 2000) (noting that the numerosity requirement is satisfied where it is clear that joinder would be impracticable); *Franklin v. Barry*, 909 F. supp. at 30 (finding that a class of approximately 200 persons was "sufficiently large that it would be extremely difficult or inconvenient to join all the members of the class."); *Lewis v. Nat'l Football League*, 146 F.R.D. at 8-9 (finding numerosity requirement satisfied where approximately 250 players were members of the class and geographical dispersion of

potential class members rendered joinder "clearly
impracticable.").

> b)   Rule 23 (a)(2) - Commonality

This Court has previously observed that

> [t]he primary concern in assessing the commonality and
> typicality requirements of Rule 23(a) is to ensure that
> "maintenance of a class action is economical and [that] the
> named plaintiff's claim and the class claims are so
> interrelated that the interests of the class members will be
> fairly and adequately protected in their absence."  "The
> commonality test is met where there is at least one issue,
> the resolution of which will affect all or a significant
> number of the putative class members."

*Keepseagle v. Veneman*, Civ. A. No. 99-3119, mem. op. at 19
(D.D.C. Dec. 12, 2001) (citations omitted). "Traditionally,
commonality refers to the group characteristics of the class as a
whole, while typicality refers to the individual characteristics
of the named plaintiff in relation to the class." *Jarvaise v.
Rand Corporation*, 212 F.R.D. 1, 3 (D.D.C. 2002) (citation
omitted).

Federal defendants oppose class certification on the grounds
that the alleged injuries of members of the putative class are
too diverse. For instance, they contend that innocent bystanders
cannot assert First Amendment claims because they were not
present at Pershing Park for the purpose of expressing political
views. Moreover, federal defendants suggest that members of the
proposed class would include "violent and unlawful" demonstrators
and persons who intended and desired to be arrested, as well as

19

bystanders and journalists, thereby leading to vastly different factual and legal assertions and arguments with respect to the existence of probable cause, as well as disparate damages should any constitutional violations be found to have occurred. According to federal defendants, because the circumstances surrounding each class member's arrest are inherently dependent on that particular individual's actions, a class action will degenerate into an individualized case-by-case analysis, thereby precluding findings of "commonality," "typicality" or "predominance."

The existence of factual distinctions between the claims of putative class members will not preclude a finding of commonality. *See Prado-Steiman v. Bush*, 221 F.3d 1266, 1279 n.14 (11th Cir. 2000); *Bynum v. District of Columbia*, 2003 WL 21911342 at *3 ("it is not necessary that every issue of law or fact be the same for each class member. Rather, factual variations among the class members will not defeat the commonality requirement, so long as a single aspect or feature of the claim is common to all proposed class members."); *Franklin v. Barry*, 909 F. Supp. at 30-31 (holding that there need not be "commonality on each fact or every issue," and finding the commonality requirement met in a case brought by Hispanic prisoners in the D.C. correctional system who experienced varying conditions of confinement, had varying degrees of fluency with the English language, and

different medical histories); *Lewis v. Nat'l Football League*, 146 F.R.D. at 9 ("the presence of individual issues does not destroy commonality. . . . particularly . . . when . . . common -- even identical -- issues of liability are present.").

Plaintiffs correctly point out that the case now before the Court is virtually identical to that before the D.C. Circuit in *Dellums v. Powell*, in which a class of persons subjected to mass arrests on the steps of the Capitol in connection with a May 5, 1971 protest against the Vietnam war was certified. *Dellums v. Powell*, 566 F.2d 167 (D.C. Cir. 1977). In *Dellums*, as here, plaintiffs asserted First, Fourth, Fifth, and Sixth Amendment challenges to their arrests, as well as claims under 42 U.S.C. § 1981 *et seq.*, and D.C. law. *Id.* at 173. The challenged police practices in that case bore a striking resemblance to those alleged in the case at bar:

> The group subsequently assembled on the East Steps of the Capitol on the House side and "began to make and listen to speeches concerning the People's Peace Treaty and related matters." While Congresswoman Abzug was addressing the crowd, at about 3:30 P.M., the police cordoned off the bottom of the steps, preventing anyone from leaving, and began arresting members of the assemblage. . . . The complaint further alleged that those arrested were held for periods of from several hours to several days without being afforded due process of law. In addition, conditions of detention were said to have been inhumane . . . [a]ccess to attorneys and telephones was said to have been denied or severely restricted.

*Id.* at 173-74. Based on these facts, the trial court certified as a class "all persons who were arrested while assembled on the

Capitol steps on May 5, 1971." *Id*. at 174. In that case, as in this one, the "focal point of the action is the question whether the arresting officer was justified in ordering the arrest of the plaintiff" without a warrant, recognizing that an order and opportunity to disperse before arrest is a prerequisite to a finding that the arrests were justified. *Id*. at 175, 182.

Defendant in *Dellums* unsuccessfully challenged certification of the class on grounds similar to those advanced by defendants here, claiming that questions of fact or law common to the members of the class did not predominate. *Id*. at 189 n. 56. That argument was rejected by the trial court and dismissed by the D.C. Circuit, which noted that "the only question generally to be tried in a false arrest suit is whether the defendant police officer is entitled to qualified official immunity . . . The qualified official immunity issue would be tried by substantially the same evidence no matter who brought suit or whether suit was brought individually, by joined plaintiffs, or by a class." *Id*.

Plaintiffs also rely on *Washington Mobilization Ctee. v. Cullinane*, an action challenging similar mass arrest tactics employed by the MPD at several large demonstrations which took place at various locations in the District from 1969-1971, in which the D.C. District Court certified a class consisting of "all persons who have participated in or observed and who intend to participate in or observe lawful, peaceful, orderly and non-

obstructive public demonstrations for the exercise of their constitutional rights of free speech and assembly." *Washington Mobilization Ctee. v. Cullinane*, 400 F. 186, 219 n.2 (D.D.C. 1975), *aff'd in part and rev'd in part*, 566 F.2d 107 (D.C. Cir. 1977) (class certification not disturbed on appeal); *see also Sullivan v. Murphy*, 380 F. Supp. 867, 868 (D.D.C. 1974) (reaffirming on remand certification of class of "all persons arrested from and including May 3, 1971, through May 6, 1971, as to whom the defendants failed to follow normal booking procedures and lack [] contemporary . . . evidence of probable cause for arrest and those as to whom . . . defendants have been unable . . . to certify to this Court their ability to establish probable cause for arrest or a prima facie case of guilt of the alleged offense committed."). Although defendants in *Cullinane* challenged certification of the class, the District Court found that the requirements of Fed. R. Civ. P. 23 were met by plaintiffs' complaint, notwithstanding the fact that its allegations spanned a period of years, and involved at least seven different demonstrations, at which the conduct of individual demonstrators varied widely, and at which the District Court acknowledged there was some unlawful activity on the part of individual demonstrators. *See Washington Mobilization Ctee. v. Cullinane*, 400 F. Supp. at 219 n.2.

Plaintiffs further argue that this case is distinguishable

from *McCarthy v. Kleindienst*, relied upon by federal defendants.
In that case, the D.C. Circuit declined to find abuse of
discretion or reversible error in the District Court's *failure to
certify* a class of over 7000 persons who were arrested during the
1972 May Day demonstrations. The plaintiffs in *McCarthy* had
delayed over three years before seeking class certification, and
the trial court found lack of commonality based on the fact that
plaintiffs were arrested in numerous locations in the District,
and the duration and conditions of confinement varied greatly,
depending on highly individualized facts. *McCarthy v.
Kleindienst*, 741 F.2d 1406, 1411, 1415 (D.C. Cir. 1984). As an
initial matter, it goes without saying that failure to find abuse
of discretion for denial of a motion for class certification
differs significantly from a finding that it would be an abuse of
discretion to have certified the class in question. *See id.* at
1415 n. 11 ("The need to defer to a district court's class
certification decision has been greatly emphasized throughout
this opinion. It is this factor that makes our decision in the
present case entirely consistent with both *Dellums v. Powell* . .
. and *Sullivan v. Murphy*, previous "May Day" cases in which this
court *upheld* district court decisions to certify a class. . . .*We
are by no means holding today that it would have been error to
certify a class in this case* . . . .") (emphasis added).

Secondly, the Circuit in *McCarthy* noted that the putative

class in that case brought an action exclusively for damages, bringing the case within the reach of Fed. R. Civ. P. 23(b)(3), and precluding a finding that common questions of law or fact "predominate over any questions affecting only individual members." *Id*. at 1411, 1413 n. 8 (noting that "the stakes in the present case are much different [than those in a case in which injunctive relief was granted to a class of plaintiffs with respect to the same arrests] given the claims for money damages"). Conversely, in the cases now before this Court, claims for injunctive relief predominate.

Furthermore, in *McCarthy*, the Circuit found that the District Court's determination that the motion for class certification in *McCarthy* was untimely, and thus would result in unwarranted further delay and "massive discovery" involving over 7000 plaintiffs was reasonable in light of the fact that plaintiffs moved for class certification over three years after the action was initiated. *Id*. at 1411. In the instant case, it is undisputed that *Barham* plaintiffs' motion for class certification was filed in a timely fashion. Moreover, when upholding the District Court's denial of class certification in *McCarthy*, the Circuit relied heavily on the potential problems of litigating plaintiffs' abuse of process claims as a class action, finding that since the existence of probable cause is not a defense to an abuse of process claim, even more individualized determinations

25

would be required to adjudicate those claims. *Id*. at 1414. No such claim is advanced in the *Barham* action. Finally, it is particularly noteworthy that the *McCarthy* court agreed that "the mere fact that damage awards will ultimately require individualized fact determinations is insufficient by itself to preclude class certification. . . . A district court, should, of course, ordinarily consider such well-established methods as bifurcating the trial into liability and damages phases before denying certification." *Id*. at 1415 (citing cases).

Plaintiffs correctly point out that in the cases now before this Court all of the arrests occurred at the same place and time, resulting from a single police action in which the putative class members were treated as a group by the defendants. Moreover, plaintiffs argue that neither the status of class members, be they journalists, protesters, or observers, nor the differences in the conditions or duration of confinement, are relevant to the predominant issue of liability for unlawful arrest, but rather would have an impact only on the amount of damages awarded. Furthermore, they submit that any such impact would not rise to a degree sufficient to destroy commonality and typicality. This conclusion is supported by the proceedings before the *Dellums* court: after the arrests challenged in *Dellums* were found to have violated the First and Fourth Amendments, a jury awarded damages against the D.C. Chief of Police for common

law false arrest, false imprisonment, and malicious prosecution, as well as for a *Bivens* claim based on First and Fourth Amendment violations. *Dellums v. Powell*, 566 F.2d at 175. Individual class members' damages for Fourth Amendment violations were based on the number of hours they were detained, whereas uniform compensatory damages were awarded for violations of First Amendment rights. *Id.*

Finally, plaintiffs submit that there is no evidence on the record to date supporting federal defendants' contention that some class members may have been engaged in violent or otherwise unlawful conduct. To the contrary, the D.C. government declined to prosecute all of the cases arising from the events of September 27, 2002 in Pershing Park. Similarly, in *Dellums*, no evidence ever surfaced, despite the government's allegations to the contrary, that individual arrestees engaged in misconduct justifying their arrest. *See Dellums*, 566 F.2d at 190. Furthermore, plaintiffs correctly contend that the existence of a defense based on individual misconduct for one or a few of the class members would not preclude class certification so long as common issues of fact and law *predominate*, particularly in light of the rules allowing for creation of sub-classes. *See* Fed. R. Civ. P. 23(c)(4).

> c)   Rule 23(a)(3) - Typicality

In its memorandum opinion in *Keepseagle*, the Court commented

that

> Typicality focuses on the similarity of the legal and
> remedial theories behind the claims of named representatives
> and those of the putative class.  Plaintiffs satisfy
> typicality if "each class member's claim arises from the
> same course of events that led to the claims of the
> representative parties and each class member makes similar
> legal arguments to prove the defendant's liability."

*Keepseagle v. Veneman*, Civil Action No. 99-3119, mem. op. at 22

(D.D.C. Dec. 12, 2001) (citations omitted).

In this case, plaintiffs correctly contend that the claims

of the named plaintiffs, all of whom were arrested in Pershing

Park on September 27, 2002 as part of a "mass arrest," and those

of potential class members, who are "all persons arrested at

Pershing Park in Washington, D.C. on the morning of September 27,

2002," are premised on the legality, *vel non*, of a "policy or

practice that is applied to all putative class members," thus

satisfying the typicality requirement. *See Kifafi v. Hilton*

*Hotels Retirement Plan*, 189 F.R.D. 174, 177 (D.D.C. 1999).

> d)   Rule 23(a)(4) - Fair and Adequate Representation

> Adequacy of representation refers to both legal counsel and
> class representatives.  Thus, "the named representative must
> not have antagonistic or conflicting interests with the
> unnamed members of the class," and "the representative must
> appear able to vigorously prosecute the interests of the
> class through qualified counsel."

*Keepseagle v. Veneman*, Civil Action No. 99-3119, mem. op. at 19

(D.D.C. Dec. 12, 2001), citing *Twelve John Does v. District of*

*Columbia*, 117 F.3d 571, 575 (D.C. Cir. 1997). Additionally, "a

finding that class counsel are adequate [is] an implicit

28

requirement of Rule 23(a)(4)." *Lewis v. Nat'l Football League*, 146 F.R.D. at 10, 11-12; *see also Jarvaise v. Rand Corporation*, 212 F.R.D. at 3. No serious challenge to adequacy of representation on the part of named plaintiffs or class counsel has been raised to date.

e)   Fed. R. Civ. P. 23(b)

Plaintiffs need only establish that their action meets *one* of the requirements of Fed. R. Civ. P. 23(b). Fed. R. Civ. P. 23(b); *Amchem Products, Inc. v. Windsor*, 521 U.S. at 614; *Franklin v. Barry*, 909 F. Supp. at 31.  Plaintiffs in these cases allege that defendants "acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole," and satisfying the requirements of Fed. R. Civ. P. 23(b)(2). *See* Fed. R. Civ. P. 23(b)(2); *Eubanks v. Billington*, 110 F.3d 87, 92 (D.C. Cir. 1997) (describing declaratory and injunctive relief applicable to a class as a whole as the "defining characteristic" of a Fed. R. Civ. P. 23(b)(2) class).

As our Court of Appeals recently observed, certification pursuant to Fed. R. Civ. P. 23(b)(2) "is particularly well-suited for civil rights actions where 'a party is charged with discriminating unlawfully against a class.'" *In re: Veneman*, 309 F.3d at 792. The fact that plaintiffs assert claims for monetary

damages does not change this result, as those claims are incidental to their requests for injunctive relief, rendering certification pursuant to subsection (b)(2) appropriate. *See Eubanks v. Billington*, 110 F.3d at 92 ("Courts have generally permitted (b)(2) classes to recover monetary relief in addition to declaratory or injunctive relief, at least where the monetary relief does not predominate."); *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1003 n.7 (D.C. Cir. 1986).[5]

Accordingly, it seems that here, as in *Lewis*, "the conclusion that the class action is superior cannot seriously be questioned" given the number of potential class members, their dispersal throughout the nation, the likelihood that each of the potential class members would have to "conduct expensive, extensive discovery" in order to establish municipal liability for compensatory damages under 42 U.S.C. § 1983, and the fact that 400 separate trials for damages would "certainly be a waste

---

[5] It appears that plaintiffs' class claims also satisfy the requirements of Fed. R. Civ. P. 23(b)(1)(A) because maintaining separate actions would "create a risk of inconsistent adjudications, thus establishing incompatible standards of conduct" for MPD officers. *See* Fed. R. Civ. P. 23(b)(1)(A); *Franklin v. Barry*, 909 F. Supp. at 31. Alternatively, the proposed class seems to meet the requirements for certification pursuant to Fed R. Civ. P. 23(b)(1)(B), given that separate actions by individual class members would "as a practical matter be dispositive of the interests" of non-party class members "or substantially impede their ability to protect their interests" because resolution of issues of probable cause and First Amendment rights in one case may have a preclusive effect on other class members' future claims. *See* Fed. R. Civ. P. 23(b)(1)(B).

of judicial resources." *See Lewis v. Nat'l Football League*, 146 F.R.D. at 12. Additionally, absent class certification, "a significant number of individuals [would be] deprived of their day in court because they are otherwise unable to afford independent representation" given the relatively low monetary return on pressing their claims. *See Jarvaise v. Rand Corporation*, 212 F.R.D. at 4. Moreover, as the court in *Dellums* demonstrated, there exist efficient ways in which, assuming the arrests and detentions are found to be unlawful, disparities in conditions and length of detention among class members can be addressed at the damages stage without destroying the cohesiveness required for maintaining a class action. *See Dellums v. Powell*, 566 F.2d 174 n. 6 (damages awarded by jury were $120 for 12 hours or less of detention; $360 for 12 to 24 hours of detention, $960 for 24 to 48 hours of detention, and $1,800 for 48 to 72 hours of detention).

As the D.C. Circuit stated in *Dellums* when addressing virtually identical facts, "[i]t is precisely this situation in which each class member would have to present the same case were he to proceed individually to which Rule 23(b)(3) is addressed since a class action would in such circumstances consolidate otherwise identical actions into a single efficient unit." *Id*. at 189 n. 56. Nevertheless, given that District defendants have not yet filed their opposition to plaintiffs' motion for class

certification in *Barham*, the Court will certify the class in that case on a provisional basis only, pending a motion for reconsideration, if any, by the District of Columbia. Although not required, this Circuit has held that District Courts have the discretion to grant opt-out rights in class actions certified pursuant to Fed. R. Civ. P. 23(b)(1) or (2). *Eubanks v. Billington*, 110 F.3d at 94. However, before providing for notice and an opportunity to opt-out of the *Barham* class action, the Court will afford the District defendants an opportunity to seek reconsideration of its decision to certify the class.

## II.  Individual actions

Counsel for plaintiffs in both cases filed on behalf of individuals only, *Chang v. United States*, Civil Action No. 02-2010, and *Franklin Jones v. District of Columbia*, Civil Action No. 02-2310, have clearly indicated that their clients do not wish to join either of the proposed class actions. Accordingly, the plaintiffs in these two cases will be treated as if they have opted out of the provisionally certified class action in *Barham v. Ramsey*, Civil Action No. 02-2283.

Several considerations counsel in favor of consolidating the two actions brought on behalf of individual plaintiffs who do not wish to participate in the proposed class actions. *Chang v. United States*, Civil Action No. 02-2010, was brought by seven individual plaintiffs, all of whom are law and undergraduate

students at George Washington University. All plaintiffs were
present at the events in Pershing Park on September 27, 2002,
either in their capacities as legal observers for the National
Lawyers' Guild or in their capacities as reporters for the GW
student newspaper, "The Hatchet," and were caught up in the mass
arrest. Plaintiffs seek injunctive and declaratory relief finding
the MPD's alleged "trap and arrest" policy and procedures
unconstitutional, and prohibiting the MPD from surrounding
individuals, failing to give an order to disperse or depriving
them of the ability to comply with any such order, and arresting
any person caught within the surrounded area without regard to
whether the individual has engaged in any illegal conduct. They
also ask this Court to declare unconstitutional the use of
excessive force to prevent individuals from leaving surrounded
areas during the execution of the "trap and arrest" policy, as
well as the MPD's alleged practices of handcuffing an
individual's wrist to the opposite ankle and detaining them for
24 hours or more in that position, engaging in threatening and
abusive conduct toward detainees, and denying detainees access to
counsel following arrest pursuant to execution of the "trap and
arrest" policy. Plaintiffs assert that the challenged practices
violate the First, Fourth, Fifth, Sixth, and Fourteenth
Amendments to the U.S. Constitution, as well as laws and policies
governing the proper conditions of arrest, use of restraints, and
processing of individuals in the custody of the MPD.  Like

33

plaintiffs in *Barham*, *Chang* plaintiffs also name the federal government as a defendant on the theory that the U.S. Park Police participated in planning and executing the trap and arrest procedure which led to plaintiffs' alleged injuries.

*Franklin Jones v. District of Columbia*, Civil Action No. 02-2310, was commenced by three individual plaintiffs, all of whom were present at the Pershing Park demonstration on September 27, 2002 in their capacities as photojournalism students at the Corcoran College of Art and Design seeking field experience covering a major news event. All plaintiffs allege that they came to Freedom Plaza, took photographs, were subsequently informed, without further justification, that they were not permitted to leave the area, and were arrested and detained. They assert claims based on violations of their First Amendment rights of freedom of speech, assembly, and of the press, as well their Fourth Amendment right to be free from unreasonable searches and seizures.

Although they bring claims primarily against the District of Columbia, D.C. Mayor Anthony Williams, and MPD Chief Charles Ramsey in their official capacities, the *Jones* plaintiffs also name as defendants John/Jane Does who provided material assistance and participated in the constitutional violations alleged by plaintiffs, in their individual and/or official capacities. These individuals could conceivably include the

federal defendants named by plaintiffs in *Chang* as participants in the challenged practices. Discovery directed at ascertaining who these individuals might be would likely overlap with the discovery sought by the *Chang* plaintiffs with respect to their *Bivens* claims, as well as that regarding interagency cooperation and planning among federal and local law enforcement agencies prior to and on September 27, 2002. Furthermore, plaintiffs in both the *Chang* and *Jones* cases allege that their status as reporters and legal observers gives rise to particularized First Amendment violations. Accordingly, the Court finds that the cases share sufficient common issues of law and fact such that consolidation is appropriate under Fed. R. Civ. P. 42(a).

## III. Conclusion

Upon careful consideration of the pending motions for consolidation and class certification, the responses and replies thereto, the governing statutory and case law, and the entire record in the above-captioned cases, for the reasons stated herein, it is by the Court hereby

**ORDERED** that, upon reconsideration, District defendants' motion to consolidate *Barham v. Ramsey*, Civil Action No. 02-2283, and *Abbate v. Ramsey*, Civil Action No. 03-767, is hereby **DENIED;** and it is

**FURTHER ORDERED** that the pending motion for class certification in *Barham v. Ramsey*, Civil Action No. 02-2283 is

35

hereby **GRANTED**. The Court provisionally certifies the following class for plaintiffs' class claims for declaratory, injunctive, and compensatory relief pursuant to Fed. R. Civ. P. 23(b)(2): all individuals who were arrested in Pershing Park in the District of Columbia on September 27, 2002; and it is

    **FURTHER ORDERED** that the District of Columbia shall have until **October 9, 2003** to file a motion for reconsideration of class certification in *Barham v. Ramsey*, Civil Action No. 02-2283. Any responses shall be filed by **October 23, 2003**, and any replies by **November 6, 2003**; and it is

    **FURTHER ORDERED** that the motion for class certification in *Abbate v. Ramsey*, Civil Action No. 03-767 is hereby **DENIED**. Named plaintiffs in that case shall be treated as individual plaintiffs who have elected to opt out of the *Barham v. Ramsey* class action and pursue their claims on an individual basis; and it is

    **FURTHER ORDERED** that *Chang v. United States*, Civil Action No. 02-2010, and *Franklin Jones v. District of Columbia*, Civil Action No. 02-2310, are hereby **CONSOLIDATED** under Case No. 02-2010. All future pleadings in these cases shall be filed under the earlier case number; and it is

    **FURTHER ORDERED** that plaintiffs in *Chang v. United States*, Civil Action No. 02-2010, and *Franklin Jones v. District of Columbia*, Civil Action No. 02-2310, are hereby directed to file a

global consolidated complaint in their consolidated case by no later than **September 25, 2003**; and it is

**FURTHER ORDERED** that all pending motions in *Chang v. United States*, Civil Action No. 02-2010, and *Franklin Jones v. District of Columbia*, Civil Action No. 02-2310, are hereby **DENIED** without prejudice; and it is

**FURTHER ORDERED** that defendants shall file any potentially dispositive motions in the three remaining cases by no later than **October 9, 2003**; and it is

**FURTHER ORDERED** that plaintiffs shall file any responses to potentially dispositive motions by no later than **October 23, 2003**; and it is

**FURTHER ORDERED** that defendants shall file replies in support of potentially dispositive motions by no later than **November 6, 2003**; and it is

**FURTHER ORDERED** that a hearing on pending motions is scheduled for **December 11, 2003** at **10:00 a.m.** in Courtroom One; and it is

**FURTHER ORDERED** that the Clerk of the Court is directed to file under seal the letters to the Court from plaintiff's counsel in *Barham v. Ramsey*, Civil Action No. 02-2283, and *Abbate v. Ramsey*, Civil Action No. 03-767, dated September 15, 2003 to preserve the record of these cases.

37

```
Signed:    EMMET G. SULLIVAN
           UNITED STATES DISTRICT JUDGE
           September 19, 2003
```

Notice to:

Jonathan Turley, Esquire
2000 H St. N.W.
Washington, D.C. 20052

Brian Charles Malone, Esquire
Mooers & Associates
1730 M Street, N.W. Suite 905
Washington, DC 20036

Jarrett A. Williams, Esquire
Joseph Edward Topmiller, Esquire
Schuyler William Livingston, Jr., Esquire
Covington & Burling
1201 Pennsylvania Avenue, N.W.
Washington, MD 20004

Arthur Spitzer, Esquire
ACLU National Capital Area
1400 20th St. N.W., Suite 119
Washington, D.C.  20036

Mara E. Verheyden-Hilliard, Esquire
Carl L. Messineo, Esquire
Zachary J. Wolfe, Esquire
Partnership for Civil Justice
1901 Pennsylvania Avenue N.W.
Washington, DC 20006

Daniel C. Schwartz, Esquire
Vanessa Y. Chandler, Esquire
Scott M. Badami, Esquire
Bryan Cave, LLP
700 13th St., N.W.
Washington, D.C. 20005

Laurie Weinstein, Esquire
Marina Utgoff Braswell, Esquire
Assistant United States Attorney
555 4th ST. N.W., 10th fl.
Washington, D.C.  20530

Thomas L. Koger, Esquire
Jacques P. Lerner, Esquire
Office of the Corporation Counsel
441 4th Street, N.W., Sixth Floor
Washington, DC 20001