IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JULIE ABBATE )
816 C Street, S.E. )
Washington, DC 20003 )
)
CHRISTOPHER DOWNES )
3327 Mantua Drive )
Fairfax, VA 22031 )
)
JOSEPH L. MAYER ) No. 03-CV-00767 (EGS)
9340 Fairfax Street )
Arlington, VA 22309 )
)
MINDI MORGAN )
1215 North Quinn Street, Apartment #17 )
Arlington, VA 22209 )
)
TOM ULRICH )
2902 Woodway Place )
Cheverly, MD 20785 )
)
      Plaintiffs, )
v. )
)
CHIEF CHARLES H. RAMSEY )
in his individual capacity )
Metropolitan Police Department )
300 Indiana Avenue, N.W. )
Washington, DC 20001 )
)
ASSISTANT CHIEF PETER J. NEWSHAM )
in his individual capacity )
Metropolitan Police Department )
300 Indiana Avenue, N.W. )
Washington, DC 20001 )
)
THE DISTRICT OF COLUMBIA )
John A. Wilson Building )
1350 Pennsylvania Avenue, N.W. )
Washington, DC 20004 )
)
      Defendants. )
)

## AMENDED COMPLAINT

Plaintiffs Julie Abbate, Christopher Downes, Joseph Mayer, Mindi Morgan, and Tom Ulrich allege as follows:

## INTRODUCTION

1. This is an action seeking damages and other relief for the arrest and detention of the plaintiffs as part of an illegal mass arrest and detention of over 400 persons who were participating in or observing a peaceful demonstration at Pershing Park in Washington, D.C., on the morning of Friday, September 27, 2002. Those arrested had committed no crime when they were surrounded by police from the Metropolitan Police Department and were given no opportunity to disperse or otherwise depart peacefully. They were forced by phalanxes of armed police to remain in the park until a convoy of buses arrived at the scene, and were then arrested *en masse*, placed on the buses, and hauled off in handcuffs or other restraints to the Police Academy in southwest Washington. There they were detained on the buses for many hours, with their hands cuffed behind their backs. Thereafter, they were detained through Saturday on the floor of the police gymnasium, often with one of their wrists cuffed to the opposite ankle.

2. Although the arrestees were charged with "failure to obey a police order," no order to disperse was ever given, as even the MPD now admits, and in fact the arrestees had not disobeyed any orders. The charge of "failure to obey a police order" was unfounded and pretextual. The MPD recently completed a report summarizing the findings of its internal investigation of the Pershing Park arrests. According to the Chair of the City Council Judiciary Committee, Kathy Patterson, the confidential report concludes that "not a single arresting officer gave or observed a police warning" and that "law enforcement officials did not hear any orders given to those who were subsequently arrested."

3. The true purpose of the Pershing Park mass arrests instead appears to have been to disrupt and prevent political demonstrations scheduled for the weekend of September 27-29,

2

2002. There was no probable cause for the arrests and no legitimate justification for the lengthy detention and mistreatment of the arrestees.

4. The named plaintiffs, each of whom was arrested at Pershing Park and detained for as much as 30 hours before being released, accordingly bring this action under 42 U.S.C. § 1983 and the common law to vindicate their civil rights, including the rights to be free from the unreasonable seizure of their persons or deprivation of liberty or property without due process of law and to exercise their First Amendment rights of speech and assembly.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) and (4), and 1367. Plaintiffs bring this action under 42 U.S.C. § 1983 to vindicate rights arising under the First, Fourth, and Fifth Amendments to the United States Constitution. The Amended Complaint also seeks relief authorized by the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02. Plaintiffs' common law claims arise from the same occurrences as plaintiffs' constitutional claims and are within the supplemental jurisdiction of this Court.

6. Venue is proper in this district under 28 U.S.C. § 1391(b). A substantial part of the events or omissions giving rise to the claims asserted in this Amended Complaint occurred within this judicial district.

## PARTIES

7. Plaintiff Julie Abbate is a resident of Washington, D.C. Ms. Abbate was arrested in Pershing Park on the morning of September 27, 2002. She was thereafter detained and held against her will until approximately 9:00 in the evening on September 28, 2002.

8. Plaintiff Christopher Downes is a resident of northern Virginia. Mr. Downes was arrested in Pershing Park on the morning of September 27, 2002. He was thereafter detained and held against his will for more than 24 hours.

3

9. Plaintiff Joseph L. Mayer is a resident of northern Virginia. He is a retired United States Army lieutenant colonel. Mr. Mayer was arrested in Pershing Park on the morning of September 27, 2002. He was thereafter detained and held against his will for approximately 29 hours.

10. Plaintiff Mindi Morgan is a resident of northern Virginia. Ms. Morgan was arrested in Pershing Park on the morning of September 27, 2002. She was thereafter detained and held against her will until approximately 2:00 in the afternoon on September 28, 2002.

11. Plaintiff Tom Ulrich is a resident of Maryland. Mr. Ulrich was arrested in Pershing Park on the morning of September 27, 2002. He was thereafter detained and held against his will until approximately 10:45 in the morning on September 28, 2002.

12. Defendant Charles H. Ramsey is the Chief of Police of the District of Columbia Metropolitan Police Department ("MPD"). At all times relevant to this Complaint, defendant Ramsey was acting within the scope of his employment and under color of law of the District of Columbia. Defendant Ramsey is sued in his individual capacity.

13. Defendant District of Columbia is a municipal corporation and constitutes the local government of Washington, D.C.

14. Defendant Peter J. Newsham is Assistant Chief of Police of the District of Columbia Metropolitan Police Department ("MPD"). At all times relevant to this Complaint, defendant Newsham was acting within the scope of his employment and under color of law of the District of Columbia. Defendant Newsham is sued in his individual capacity.

## FACTS

### The Mass Arrest at Pershing Park and Detention of the Plaintiffs

21.     Pershing Park is a public park located on Pennsylvania Avenue, N.W., Washington, D.C., between 14th and 15th Streets. It is adjacent to Freedom Plaza, an open public square lying between 13th and 14th Streets. Freedom Plaza and Pershing Park are located in the center of Washington's downtown government and business district and are in close proximity to numerous hotels and tourist destinations. Office workers, government employees, tourists, visitors and others commonly pass through Pershing Park and Freedom Plaza on a daily basis. Freedom Plaza is also frequently used for large public gatherings, such as outdoor concerts and festivals as well as political demonstrations and events.

22.     One such event was a political demonstration scheduled to occur on the morning of Friday, September 27, 2002, at Freedom Plaza. The demonstration was one of many on a variety of political issues planned for that weekend. The Freedom Plaza event was widely discussed in the media before September 27. The sponsors advertised the event as involving various peaceful activities, such as an anti-"war drums" drumming circle, chanting, and dancing, intended to dramatize the demonstrators' opposition to an invasion of Iraq.

23.     When the demonstrators and their supporters (as well as observers and bystanders) arrived at Freedom Plaza on the morning of September 27, 2002, they were met by a large contingent of police in full riot gear who ordered anyone attempting to enter Freedom Plaza to assemble instead in Pershing Park. The planned demonstration began in Pershing Park and was conducted peacefully and without disruption of traffic or pedestrians.

24.     Additional riot police thereafter arrived on the scene and surrounded Pershing Park. The police continued to allow people to enter Pershing Park but refused to allow anyone to leave the park once they had entered (even if they had entered voluntarily and not in response to a police order), and physically blocked efforts by people to leave the park. No order was given

to the demonstrators to stop their activities, which continued to attract spectators and on-lookers into Pershing Park.

25. The police then closed the perimeter around Pershing Park and began a coordinated mass arrest of the crowd trapped in Pershing Park. Police charged into the crowd, shoving back those closest to the police lines until the crowd was standing shoulder-to-shoulder with essentially no room to move, and then arrested nearly everyone who happened to be inside the park. In carrying out many of the arrests, the police struck some people who were offering no resistance and knocked them onto the ground, inflicting injuries ranging from bruises and abrasions to broken bones and dislocations.

26. Arrestees were held at the Police Academy and other locations for unusually prolonged periods of time under injurious and humiliating conditions. They were not promptly given access either to counsel or the courts, and they were repeatedly denied the ability to obtain a timely release through the normal methods of accepting a citation or posting and forfeiting collateral. Many were not released until Saturday evening, an extraordinary length of time given the minor nature of the unfounded and pretextual charges for which they were arrested.

27. Ordinarily, individuals arrested on minor charges such as "failure to obey" are not detained until they can be brought to court but are offered the options of "citation release," whereby they receive a citation with a court date at which they can contest the charges against them, or "post and forfeit," whereby they pay a small sum of money and are released with no court date. During their confinement at the Police Academy, arrestees who wished to obtain a prompt release by receiving a citation were denied this option, ostensibly because the "computers were down." Other arrestees who wished to post and forfeit collateral in order to obtain their release were denied this option as well, or had it withheld for an extended period of time. During the course of their detention, police officers repeatedly informed arrestees that if they decided to challenge the legality of their arrest, they would be held for an even longer period of time, at

6

least until Monday, September 30, 2002; this information later proved to be false. At some point the "post and forfeit" option was made available to many arrestees, but the "citation release" option was not.

28. Plaintiff Julie Abbate went to Pershing Park to observe the protesters. At no time did she hear the police give any order to disperse or any warning that persons entering the park would be subject to arrest. She attempted to leave the park when she noticed that the police presence was increasing, but the police refused to let her leave. She was then arrested along with the rest of the crowd even though she had broken no laws and had not disobeyed any police order. She was placed on a bus and taken to the Police Academy in southwest Washington, where she remained on the bus for over four hours with her hands cuffed behind her back while waiting to be taken off the bus for processing. She was detained for approximately twelve hours in the gymnasium of the Police Academy with her right wrist cuffed to her left ankle. She was later moved to a holding cell in another facility near 5th Street, NW, and then to another holding cell at the D.C. Superior Court. While at D.C. Superior Court (where she would not have been but for her arrest), she was strip-searched by United States Marshals, which was distressful and humiliating. She was finally released from custody at approximately nine p.m. on Saturday, September 28, 2002 -- approximately 35 hours after she was arrested in Pershing Park. As a result of her arrest, she was forced to miss a previously scheduled flight to Michigan and incurred re-ticketing fees of $200.

29. Plaintiff Christopher Downes went to Freedom Plaza on the morning of September 27, 2002 to participate in an anti-war demonstration. He joined other demonstrators in Pershing Park when he saw that the police had blocked off Freedom Plaza. At about 9:15 a.m., he decided to leave the park and made several attempts to do so. Each time, however, the police officers surrounding the park prevented him from leaving. He was arrested along with the rest of the crowd even though he had not violated any laws or disobeyed any police orders and

7

never heard any order from the police telling the crowd to disperse before the arrests began. The police knocked him to the ground twice, the second time causing him to fall and fracture his rib. The police handcuffed him and drove him in a bus to the Police Academy, where he was kept on the bus for approximately four hours before being taken to Cell Block B at 4th and F Streets, NW, for processing. He was taken to the hospital twice because his fractured rib caused him pain and difficulty breathing. He was eventually transported to the courthouse, where he was informed that the prosecutor would "no paper" his case. He was finally released from custody around four p.m. on Saturday afternoon. As a result of the injuries he sustained during his arrest, he incurred unreimbursed medical expenses of $1,768.

30. Plaintiff Joseph Mayer went to Freedom Plaza to participate in what he thought was a permitted demonstration opposing President Bush's policies on Iraq. He followed police instructions to join a crowd of demonstrators across the street in Pershing Park, where he displayed an anti-war banner. When he attempted to leave the park, the police surrounding the park closed ranks and physically blocked his attempt. He was arrested along with the rest of the crowd even though he had done nothing illegal and had not disobeyed any police orders. At no time did he hear the police order the people in Pershing Park to disperse or give any warning that persons entering the park would be subject to arrest. He was placed on a bus and taken to the Police Academy, where he waited on the bus in handcuffs for approximately fourteen hours before being taken into the Police Academy gymnasium, where he was detained for another fourteen hours on the floor of the gymnasium with one hand cuffed to the opposite foot. He was finally released from custody between three and four p.m. on Saturday, September 28, 2002.

31. Plaintiff Mindi Morgan went to Freedom Plaza to watch an anti-war demonstration before attending classes. After she noticed that the police had surrounded Pershing Park, she attempted to leave the Park and told several police officers guarding the perimeter that she was a student and had to go to class. None would let her leave. She never

8

heard the police give any order to the crowd to disperse before the arrests began. She was arrested along with the rest of the crowd even though she had not broken any law or disobeyed any police order. Her hands were cuffed behind her back with plastic flexi-cuffs and she was put on a bus along with several other arrestees. The cuffs were so tight that her hand went numb. She was taken in the bus to the Police Academy, where she was kept on the bus for several hours with her hands cuffed behind her back. It was 6 a.m. Saturday morning before she was finally taken into the Academy for processing. She was taken to the police gymnasium inside the Academy building and made to sit on a mat on the floor with one wrist cuffed to the opposite ankle. She was not released until approximately 2:00 p.m. on Saturday, September 28, 2002.

32. Plaintiff Tom Ulrich went to Freedom Plaza to participate in anti-war protest. When he arrived at Freedom Plaza, he found that it had been blocked off by police, and that the protesters had assembled instead at Pershing Park. When a large number of police began to ring the park, he attempted to leave the park. The police did not allow him to leave. He never heard the police give any order to the protesters to disperse. He was told by one police officer that he was not under arrest but was being detained simply because "you are here." He was arrested along with the rest of the crowd even though he had broken no laws and had not disobeyed any police order. He was handcuffed with his hands behind his back and taken on a bus to the Police Academy. He was detained on the bus until approximately one a.m., handcuffed at all times and allowed only three brief opportunities to stretch outside the bus. He was then processed into a basketball gym at the Academy, where he was told to sit or lie on thin mats on the floor and was handcuffed wrist-to-ankle, which was exceedingly uncomfortable for him. He was finally released at approximately 10:45 a.m. on Saturday. As a result of his arrest, he had to pay transportation costs of approximately $25, and the police confiscated a magazine he had brought with him when he was arrested.

9

39.   Neither the prolonged detention of the plaintiffs nor the conditions of their confinement were required for any legitimate purpose. The defendants intentionally subjected plaintiffs and other arrestees to prolonged detention and onerous conditions in order to prevent or deter them from engaging in lawful and constitutionally protected activity. On the morning of the arrests, defendant Ramsey stated: "These people that are apprehended are going to miss several protests . . . because they'll be behind bars."

## Culpability of the Defendants

40.   The mass arrest at Pershing Park was carried out by officers of the Metropolitan Police Department, who were acting within the scope of their employment by the District of Columbia. MPD police officers were aided by law enforcement personnel from several other jurisdictions, who were acting as agents of the District of Columbia on September 27, 2002.

41.   Chief Ramsey personally directed and approved the actions of the police at Pershing Park. Chief Ramsey said to a reporter at the scene while he observed the lines of riot police surrounding Pershing Park: "Ain't it a thing of beauty, to see our folks up there ready to go."

42.   Assistant Chief Newsham participated in the arrest of the plaintiffs and others assembled at Pershing Park. Assistant Chief Newsham knew that the police had not ordered the crowd to disperse or given the crowd an opportunity to disperse.

43.   There was no probable cause or reasonable basis for the arrest of the plaintiffs or the crowd as a whole. The crowd was peaceful and was not threatening any violence or disruption. No order to disperse had been given by the police before the mass arrest began. On the contrary, plaintiffs and other members of the crowd were forcibly prevented from departing Pershing Park peacefully. Defendant District of Columbia has acknowledged that there was no lawful basis for these arrests. The communications director of the Office of the Corporation Counsel of the District of Columbia has stated that District has declined to prosecute anyone

arrested in Pershing Park because "[w]e did not feel in the cases that came from Pershing Park . . . that we had probable cause that a crime was committed and/or that a specific individual committed a crime."

44. Defendants' true motive for the arrest and lengthy detention of the crowd was to prevent its members from observing or participating in demonstrations that were occurring or expected to occur over the weekend in the District of Columbia.

45. Defendant Ramsey has final decision-making authority and is responsible for establishing government policy for the District of Columbia in matters concerning the arrest and detention of persons by the Metropolitan Police Department. Defendant Ramsey's decision to arrest and detain the plaintiffs and other members of the crowd assembled at Pershing Park constituted an official policy of the District of Columbia for purposes of 42 U.S.C. § 1983.

46. The mass arrest, lengthy detention of plaintiffs and other arrestees, and the use of excessive force by the police were in conformity with a custom, policy, or practice of the District of Columbia.

47. In undertaking the mass arrest and subsequent detention of the plaintiffs on September 27, 2002, defendants acted maliciously, with the motive and intent to violate the constitutional and common law rights of the plaintiffs, or with reckless or callous indifference to the federally protected and common law rights of the plaintiffs.

48. Plaintiffs suffered numerous injuries and damages, including the following, as a direct and proximate result of the customs, policies, and practices of the District of Columbia, the actions of District of Columbia policymakers, and the actions of Chief Ramsey and Assistant Chief Newsham and the police acting under their direction:

    a. Violation of their constitutional rights of freedom of speech, assembly, and association under the First Amendment to the United States Constitution;

  b. Violation of their constitutional right to be free from an unreasonable search and seizure of their persons under the Fourth Amendment to the United States Constitution;

  c. Violation of their constitutional right to be free from deprivation of liberty or property without due process of law under the Fifth Amendment to the United States Constitution;

  d. Violation of their right under the common law of the District of Columbia to be free from false arrest, false imprisonment, assault and battery, and the intentional infliction of emotional distress;

  e. Monetary loss, including medical fees and expenses, and other expenses arising out of their illegal arrest, detention, and mistreatment;

  f. Bodily injuries;

  g. Personal and reputational injuries, including pain and suffering, humiliation, embarrassment, anguish, and emotional distress, arising out of their illegal arrest and detention and the conditions of their confinement; and

  h. Loss and/or destruction of personal property.

49. The constitutional rights of the plaintiffs that were violated by Chief Ramsey, Assistant Chief Newsham, and the police officers acting under their direction were clearly established and well settled as of September 27, 2002.

50. Defendants intend to employ similar mass arrest tactics in the future. It is likely that plaintiffs will again be participants or onlookers or passersby at demonstrations in the District of Columbia, and therefore are subject to being arrested and detained again pursuant to the customs, practices, and policies of the District of Columbia simply for observing, attending, or participating in future demonstrations.

## **FIRST CLAIM FOR RELIEF:**

## **42 U.S.C. § 1983**

51. Plaintiffs reallege and incorporate by reference paragraphs 1 through 50 as if fully set forth herein.

52. Defendants are liable to the plaintiffs under 42 U.S.C. § 1983 for the violation under color of law of their constitutional rights of freedom of speech, assembly, and association under the First Amendment to the United States Constitution; their constitutional right to be free from an unreasonable search and seizure of their persons under the Fourth Amendment to the United States Constitution; and their constitutional right to be free from any deprivation of liberty or property without due process of law under the Fifth Amendment to the United States Constitution.

## **SECOND CLAIM FOR RELIEF:**

## **False Arrest and Imprisonment, Assault and Battery, Intentional Infliction of Emotional Distress**

53. Plaintiffs reallege and incorporate by reference paragraphs 1 through 52 as if fully set forth herein.

54. Defendants are liable to the plaintiffs under District of Columbia law for false arrest and imprisonment, assault and battery, and intentional infliction of emotional distress.

55. The notice requirements of D.C. Code § 12-309 have been satisfied as to the named plaintiffs by virtue of the notice letters sent by the undersigned on March 21 and 26, 2003, by other notice letters sent by individual plaintiffs, and by reports and records of the Metropolitan Police Department regarding the September 27, 2002, mass arrest at Pershing Park.

## **PRAYER FOR RELIEF**

WHEREFORE, the plaintiffs request relief as follows:

(a) Judgment declaring that the defendants violated the First, Fourth, and Fifth Amendment rights of the plaintiffs;

(b) Compensatory damages against the defendants jointly and severally;

(c) Punitive damages;

(d) A permanent injunction prohibiting the defendants, and all persons acting as their agents or in concert with them, from:

    (i) taking preemptive action to confine, detain, or arrest individuals participating in or observing demonstrations;

    (ii) directing individuals participating in or observing demonstrations to proceed to a location for the purpose of making preemptive arrests;

    (iii) arresting individuals participating in or observing demonstrations on a charge of failure to obey a police order, or on a charge of unlawful assembly, without first having provided those individuals with fair notice of the order and opportunity to comply;

    (iv) restraining misdemeanor arrestees by handcuffing a wrist to an ankle, unless such restraint is necessary to control an individual who is behaving in a violent or uncontrollable manner; and

    (v) failing to provide individuals who are arrested and charged with non-violent misdemeanors as a result of having participated in or witnessed demonstrations with a clear and reasonable opportunity to obtain a "citation release";

(e) An order compelling the defendants to expunge all records of the arrests of the plaintiffs relating to the September 27, 2002, arrests, and compelling the defendants to retrieve

and expunge, or cause the expungement of, all such records that are in the hands of other government agencies as a result of having been transmitted or forwarded by the defendants;

(f) Attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

(g) Such other relief, including injunctive relief, as is just and proper under the circumstances.

## JURY DEMAND

Trial by jury is demanded on all issues for which a jury trial is available.

_____/s/ William Livingston / JAW_____
S. William Livingston, Jr. (D.C. Bar # 59055)
Jarrett A. Williams (D.C. Bar # 449374)
Thomas J. Cosgrove (D.C. Bar # 479454)
COVINGTON & BURLING
1201 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2401
(202) 662-6000

Attorneys for Plaintiffs Julie Abbate, Christopher Downes, Joseph L. Mayer, Mindi Morgan, Tom Ulrich

Of Counsel:

Arthur B. Spitzer
Fritz Mulhauser
American Civil Liberties Union of the National Capital Area
1400 20th Street, N.W., Suite 119
Washington, D.C. 20036
(202) 457-0800

James R. Klimaski
National Lawyers Guild
Klimaski & Associates, P.C.
1400 K Street, N.W., Suite 1000
Washington, D.C. 20005
(202) 296-5600

Daniel M. Schember
Susan B. Dunham
National Lawyers Guild, D.C. Chapter
Gaffney & Schember, P.C.
1666 Connecticut Ave., N.W., Suite 225
Washington, D.C. 20009
(202) 328-2244