```
                UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF COLUMBIA

JULIE ABBATE, et al.,         )
                              )
          Plaintiffs,         )
                              )
     v.                       )    Civ. Action No. 03-767 (EGS)
                              )
CHIEF CHARLES H. RAMSEY,      )
     et al.,                  )
                              )
          Defendants.         )
_____)
```

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

This case arises from September 27, 2002, demonstrations occurring in the vicinity of Pershing Park[1] in Washington D.C.. Plaintiffs Julie Abbate, Christopher Downes, Joseph Mayer, Mindy Morgan, and Tom Ulrich were five of the approximately 400 people arrested and detained as a result of the Pershing Park protests. Plaintiffs allege that their arrests and their subsequent detention violate their civil rights, "including the rights to be free from the unreasonable seizure of their persons or

---

[1] Pershing Park is located two blocks from the White House, and is therefore considered an area necessitating high security. Additionally, Pershing Park is adjacent to 14th Street, a designated major artery escape route for emergency evacuations.

1

deprivation of liberty or property without due process of law and to exercise their First Amendment rights of speech and assembly." Am. Compl. ¶ 4.

Pending before the Court is defendant the District of Columbia's and defendant the Chief of Police of the District of Columbia Metropolitan Police Department ("MPD") Charles H. Ramsey's (collectively "defendants") Motion for Partial Summary Judgment on the asserted Fifth Amendment deprivation of property claims of plaintiffs Abbate, Downes, Mayer, and Morgan.[2] Upon careful consideration of the motion, and the response and reply thereto, as well as the governing statutory and case law, and for the following reasons, defendants' motion for partial summary judgment is **GRANTED**.

## II. FACTUAL BACKGROUND

Plaintiffs aver that defendants' actions resulted in a "[v]iolation of their constitutional right to be free from deprivation of . . . property without due process of law under

---

[2] Defendants' motion does not challenge plaintiff Ulrich's deprivation of property claims. Also, on June 8, 2004, after the filing of the instant motions, plaintiffs amended their Complaint to include plaintiffs Adam Eidinger and Alexis Baden-Mayer. *See* Second Am. Compl. Because the instant motions do not address any potential deprivation of property claims pertaining to these new plaintiffs, the court does not reach the issue as to Eidinger or Baden-Mayer.

2

the Fifth Amendment." Am. Compl. ¶¶ 48, 52. With respect to Abbate, plaintiffs contend that her arrest and detention required Abbate and her traveling companion to reschedule a flight, costing $200 in flight-change penalties, thereby "depriving" them of their property interest in that money. *See* Am. Compl. ¶ 28; Pls.' Opp. at 1. Downes's alleged property deprivation stems from $1,768 in medical expenses;[3] he claims defendants' actions "deprived" him of his property interest in his money. *See* Am. Compl. ¶ 29; Pls.' Opp. at 1. Defendants do not contest that plaintiffs Abbate and Downes incurred such expenses,[4] but argue that such expenditures do not constitute a deprivation of property. Defs.' Mot. for Summ. J. at 6-7. Plaintiffs make no allegation whatsoever of property deprivation with respect to Mayer and Morgan. *Id.* at ¶¶ 30-31.

## III. STANDARD OF REVIEW

This case is before the Court on the defendants' motion for summary judgment. Pursuant to Federal Rule of Civil Procedure

---

[3] Downes claims that "the police knocked him to the ground twice, the second time causing him to fall and fracture his rib," and that these injuries required two hospital visits. Am. Compl. ¶ 29.

[4] The Court notes that defendants do not concede that plaintiffs' incurred expenses were the result of any wrongful actions by defendants. *See* Defs.' Reply at 3-4.

3

56, summary judgment should be granted only if the moving party has shown that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56*; Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002).

**IV. ANALYSIS**

   **A. Plaintiffs Mayer and Morgan**

   Plaintiffs concede that Morgan and Mayer have not asserted claims for deprivation of property under the Due Process Clause of the Fifth Amendment.  Pls.' Opp. at 1.  Accordingly, with respect to plaintiffs Mayer and Morgan, defendants' Motion is granted.

   **B. Plaintiffs Abbate and Downes**

   The sole question remaining before the Court is whether plaintiff Abbate's flight rescheduling expenditure and plaintiff Downes's medical expenditures constitute a deprivation of property in violation of the Fifth Amendment.

   To determine whether plaintiffs suffered a deprivation of property in violation of the Fifth Amendment Due Process Clause, a two-part inquiry is required.  The Court must first determine

4

whether plaintiffs were deprived of a protected property interest. If such a deprivation is found, the Court must then determine whether plaintiffs received the process they were due before such deprivation. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982); *Orange v. Dist. of Columbia*, 59 F.3d 1267, 1273 (D.C. Cir. 1995).

As to the first prong, plaintiffs assert that "money is a form of property, and government action that wrongfully compels a citizen to incur monetary expenses can give rise to claim for deprivation of property without due process of law." Pls.' Opp. at 1. Plaintiffs rely on a single case for this proposition: a 1949 case from the District Court for the Northern District of Illinois, *Chicago, B. & Q.R. Co. v. Illinois Commerce Comm'n*, 82 F. Supp. 368 (N. D. Ill. 1949). However, in addition to not being binding on this Court, the *Chicago* case is easily distinguished. In *Chicago*, the court found a due process violation when a state agency's action resulted in a railroad being forced to continue its operations at a financial loss. *Id.* at 374. However, the railroad's loss was the result of a state agency's *deliberate* delay in holding the administrative proceedings necessary to permit the railroad from ceasing unprofitable operations. *Id.* at 375. The court's decision turned on *the lack of process*, not the property interest

5

involved.  Accordingly, the sole case on which plaintiffs rely--again, a case not binding on this Court--does not squarely stand for the proposition that monetary expenditures resulting from state action are property falling within the realm of the Fifth Amendment Due Process protections.[5]

Moreover, even if the Court were to find that plaintiffs' expenditures constituted a loss of property, plaintiffs still face the hurdle of establishing what additional process was "due" prior to any deprivation.  In most cases, once a protected property interest is recognized, "the Constitution requires some kind of a hearing *before* the State deprives a person of . . . property."  *Zinermon v. Burch*, 494 U.S. 113, 127 (1990).  However, in some circumstances, a pre-emptive hearing is not possible or practical; in cases where "quick action by the State" is necessary, or providing pre-deprivation process is impractical, the Supreme Court has determined that a post-

---

[5] Case law squarely addressing the question of whether money can be considered "property" in this context is quite elusive, presumably because litigants typically seek to recoup any monetary loss through compensatory damages, not as an independent constitutional violation.  Similarly, plaintiffs appear to contend that because their arrests and detentions were unconstitutional, the resulting financial loss also violated the Constitution.  Plaintiffs cite no case law supporting such a "consequential constitutional violation" theory, and the Court is unaware of such precedent.

6

deprivation hearing, or a common-law tort remedy, satisfies due process requirements. *Id.* at 128 (internal citation omitted) (collecting cases); *see also Doe by Fein v. District of Columbia*, 93 F.3d 861, 868-69 (D.C. Cir. 1996) ("where the alleged deprivation of liberty or property is not pursuant to an established state procedure, the existence of an adequate post-deprivation remedy under state tort law is all the process that is due").

Here, in the context of a mass arrest, a pre-deprivation hearing for every arrestee for potential property losses, of which the arresting officials were likely unaware, was impractical.[6]  Plaintiffs were among hundreds of those arrested within a short amount of time, and it would be unreasonable to expect the police to offer plaintiffs additional procedural safeguards to protect against property loss prior to arrest. Finally, the Court notes that, should plaintiffs' underlying claims of unconstitutional arrest and detention ultimately prove meritorious, this does not change the fact that further process was not possible at the time of arrest; rather, the underlying unconstitutionality could provide a cause of action under § 1983

---

[6] The Court stresses that this Memorandum Opinion does *not* speak to whether the underlying arrests were constitutionally infirm.

and/or tort law to recover damages.  The plaintiffs are not without recourse to ultimately recover monetary damages; however, the Fifth Amendment does not provide that recourse.

Accordingly, because a post-deprivation remedy is available --as plaintiffs' suit demonstrates--and a pre-deprivation remedy was impossible or impractical, plaintiffs are unable to establish a cognizable due process violation.

**V. CONCLUSION**

For the reasons stated above, the Court finds that plaintiffs' alleged expenditure of money resulting from their detention does not amount to a deprivation of property without due process of law.  Accordingly, it is by the Court hereby

**ORDERED** that defendants' Motion for Partial Summary Judgment on plaintiffs' deprivation of property without due process of law claims is **GRANTED.**

**Signed:    EMMET G. SULLIVAN**
**UNITED STATES DISTRICT JUDGE**
**September 15, 2004**