UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JULIE ABBATE, et al.,

        Plaintiffs,

    v.                     :  Civ. Action No. 03-00767 (EGS)

CHIEF CHARLES H. RAMSEY, et al.,

        Defendants.

## SETTLEMENT AGREEMENT BETWEEN DEFENDANTS THE DISTRICT OF COLUMBIA, CHIEF CHARLES H. RAMSEY, ASSISTANT CHIEF PETER J. NEWSHAM AND PLAINTIFFS JULIE ABBATE, ALEXIS BADEN-MAYER, CHRISTOPHER DOWNES, ADAM EIDINGER, JOSEPH L. MAYER, MINDI MORGAN, AND TOM ULRICH, COLLECTIVELY

Plaintiffs Julie Abbate, Alexis Baden-Mayer, Christopher Downes, Adam Eidinger, Joseph L. Mayer, Mindi Morgan Mancuello, and Tom Ulrich (collectively "Plaintiffs") sue defendants District of Columbia and Charles H. Ramsey, (collectively the "District Defendants") and Peter J. Newsham (collectively the "Defendants"), in this matter, *Julie Abbate, et. al, v. Chief Charles H. Ramsey, et. al*, 03CV00767 (EGS)(AK) asserting claims of constitutional violations, pursuant to 42 U.S.C. Section 1983, and common law tort claims, seeking damages, declaratory judgment, and injunctive relief, costs, and attorney fees. The parties have engaged in discovery, conducted motions practice, filed an interlocutory appeal and cross-appeal, and participated in mediation and negotiations to resolve this matter. Having done so, Plaintiffs and Defendants have agreed to resolve this litigation, upon the following terms.

### Scope of Settlement Offer and Resultant Settlement

      1.      The Defendants' Settlement Offer ("Offer") and this resultant Settlement Agreement may only be accepted jointly and collectively by all Plaintiffs in resolution and

satisfaction of all claims that have been or could have been brought by any of the Plaintiffs, their

agents, heirs, and/or assigns against any and all defendants in this case, to include any and all

persons who are or have been agents, employees, officers, or officials of the District of

Columbia. Plaintiffs' acceptance of the Defendants' Offer and this Settlement Agreement are

reflected by their signatures upon this Settlement Agreement.

2.      All defendants deny culpability and/or liability for or upon any claim asserted by

any and all Plaintiffs. This Settlement Agreement, and/or any Order, Judgment, and/or action

taken pursuant to this Settlement Agreement shall have no collateral estoppel or *res judicata*

effect, whatsoever, or otherwise preclude defendants from asserting any defense. Plaintiffs are

not prevailing parties.

**Financial Consideration**

3.      The District of Columbia will pay the "Settlement Amount" of a total of

$425,000 to all Plaintiffs, jointly and collectively in full satisfaction of all claims and potential

claims for damages and other monetary relief against all defendants encompassed by the Amended

Complaint or any subsequently-filed complaint, including claims for attorneys fees and/or other

costs incurred in prosecuting this action through the date of the execution of this Settlement

Agreement. Plaintiffs agree, jointly and severally, and on behalf of their attorneys, as well as

themselves, that under no circumstances may Plaintiffs or their attorneys obtain any monetary relief

and/or recovery for the claims encompassed by this Offer in addition to this $425,000 from the

District, or any official, officer, agent, or employee or any person who is now or has been an

official, officer, agent, or employee of the District. This Settlement Amount is to be paid by check

payable to "Covington & Burling, Interest on Lawyer Trust Account," within forty-five (45) days of

the execution of this Settlement Agreement; in the event that payment is not made within forty-

2

five (45) days of the execution of this Settlement Agreement, interest will accrue upon the

Settlement Amount at the rate provided for by 28 U.S.C. Section 1961 for interest upon

judgments commencing on the forty-sixth (46st) day following the execution of this Settlement

Agreement. Plaintiffs agree on behalf of themselves and their counsel to promptly execute such

documents and to provide such information as is reasonably and routinely necessary for the

District to issue payment of the Settlement Agreement. Payment shall be made to Covington &

Burling, which shall make an appropriate distribution to the Plaintiffs and other counsel.

  4. The Settlement Amount is payable only from the funds of the District of

Columbia and may not be collected from any other defendant in this action or from any other

person or entity.

  5. Insofar as any order may result from this Settlement Agreement, such order may

not be docketed, recorded, or reported for any purpose against any defendant other than the

District of Columbia.

**Additional Relief to Abbate Plaintiffs**

  **A.**  **Expungement and Sealing of Arrest Records**

  6. The District of Columbia will expunge all records in the possession of its

Executive Branch (including all records in the possession of the Metropolitan Police Department,

and the Office of the Attorney General for the District of Columbia) pertaining to the arrests of

the Plaintiffs at Pershing Park on September 27, 2002 and will employ best efforts to procure the

expungement of all records in the possession of the United States Government (including but not

limited to the Federal Bureau of Investigation) and any other state or local government pertaining

to the arrests of the Plaintiffs at Pershing Park on September 27, 2002.

7.    The Defendants will not oppose a motion, pursuant to District of Columbia Superior Court Rule of Criminal Procedure Rule 118, seeking the sealing of the records of any Plaintiff pertaining to his or her arrest at Pershing Park on September 27, 2002.

8.    The District of Columbia will either (1) procure the expungement or delivery to Plaintiffs' counsel of all records in the possession of the United States government (including, but not limited to the Federal Bureau of Investigation) and any other state and local government pertaining to the arrest on September 27, 2002, or resulting detention or charge of any Plaintiff; or (2) if the District is unable (in whole or in part) to procure this relief, inform Plaintiffs in writing of the specific steps, and the results thereof, taken by the District in an effort to procure it.

9.    The Defendants will not oppose any motion by any Plaintiff to the United States District Court for the District of Columbia in this case seeking an order declaring his or her arrest at Pershing Park on September 27, 2002 to be a nullity and/or seeking an order allowing any Plaintiff to deny the occurrence of his or her arrest at Pershing Park on September 27, 2002, without being subject to any penalty of perjury, fraud or other offense premised upon misrepresentation or deception, in response to any query, whether posed orally or in writing.

**B.    Conciliatory Statement**

10.    Chief Ramsey will personally sign the following conciliatory statement, addressed to each of the Plaintiffs, and presented to them through their attorneys, within thirty days after the Plaintiffs accept this Offer:

Dear [Name of Plaintiff]:

The District of Columbia government has carefully examined the events of September 27 and 28, 2002, concerning arrests and detentions that occurred on those days. Our investigation shows that our handling of various aspects of those events was flawed. Our investigation also shows that you should not have been

4

arrested or detained. On my own behalf, and that of the Government of the District of Columbia, we sincerely regret any hardship that our mistakes of September 27 and 28, 2002 may have caused you or persons close to you.

Through our review of those events, informed in part by your testimony, the District government has identified and implemented measures to prevent a recurrence of the events in question. To implement these measures, Mayor Williams and I have worked hard with the Metropolitan Police Department and the Office of the Attorney General for the District of Columbia to assure that the District of Columbia Government carries out its duty to ensure that persons may enjoy free and open expression in this city with the utmost confidence that their constitutional rights will be respected.

I hope that you will be comfortable in the future in peaceably and lawfully exercising your First Amendment rights in the Nation's Capital.

Sincerely,


CHARLES H. RAMSEY
Chief, Metropolitan Police Department
Washington, District of Columbia

### C.    Revisions to MPD Mass Demonstration Policing

11.     The District of Columbia will conduct its policing of and related to mass demonstrations in a manner to achieve the following objectives, which are identified as Objectives (a) through (k), below.

12.     Further, the District will perform and demonstrate performance of its mass demonstration policing conduct in accordance with the Objectives through objectively verifiable means and methods. One such method will be the inclusion of certain provisions governing MPD mass demonstration policing published in the MPD's Mass Demonstration Handbook or other specified appropriate MPD publications. Those provisions are the "Provisions Addressing Objectives" ("PAO's") which are set forth immediately following the respective Objective to which each applies most directly.

13.     In addition to or in lieu of PAO's in the instances of some Objectives, the District will employ other measures ("Measures") to achieve the Objectives. Those Measures are reflected below immediately following the respective Objective to which each applies most directly, either solely, or in combination with one or more PAO's. Inclusion of these PAO's in the MPD's Mass Demonstration Handbook or other specified MPD publication, as identified to each respective Objective, coupled with performance in accordance with the respective provision, and/or performance of the Measure(s) immediately following each Objective (a) through (k) below satisfies the respective Objective.

**Objective (a)**

(a) Before ordering or approving a mass arrest, the commanding officer responsible for ordering or approving a mass arrest must verify that all requirements of the law and MPD procedures for effecting a valid mass arrest have been satisfied and verify that some means exist to match each person to be arrested with a specific offense which there is probable cause to believe that person committed.

**PAO for Objective (a)**

Objective (a) is satisfied by the inclusion in MPD's Mass Demonstration Handbook of the following PAO's, coupled with MPD's compliance with this provision in responding to mass demonstrations.

a.1.  Issuance of warnings should be made by the unit commander or that commander's designee and made from stationery vantage points that are observable to the crowd or to a large number of participants.

a.2.  Whenever possible, an official deeming it necessary to issue warnings shall confer with the unit commander to explain the official's basis for believing that a warning should be issued. The commanding officer shall make any inquiries necessary to satisfy himself or herself whether the issuance is justified and direct that the issuing official act accordingly. This process is to be repeated as necessary during the course of the demonstrations.

a.3.  The issuing official shall recommend to the unit commander whether arrests should be made. If the issuing official recommends that a mass arrest be commenced, the unit commander shall satisfy himself or herself that probable cause exists for the arrest of all persons to be arrested. The unit commander should make the inquiries reflected on the "Pre-Mass Arrest Checklist"[1] in order

---

[1]  The Mass Arrest Checklist provides as follows:

**Has the Official recommending a mass arrest articulated justification for a mass arrest on these bases?**
What actions by the persons to be arrested require the proposed mass arrest?
    Has anyone been injured? Who? What was the cause of the injury?
    Has property been damaged? What? What was the cause of the damages?
Will an effort to arrest likely cause more injuries than alternative police action?
Will an effort to arrest likely cause more property damage than alternative police action?
Will an effort to arrest likely cause greater disruption of traffic flow (or potentially block evacuation routes) than alternative police action?
What are the offenses committed/to be charged?
What evidence provides probable cause for the arrest upon those charges as to each person? **You must have articulable probable cause to make any arrest.**

If the offense is incommoding, unlawful assembly, parading without a permit, and/or failure to obey a police order:
    How many orders to disperse were given?

to verify that a mass arrest is proper and lawful. The arrest of every person to be arrested must be supported by probable cause. An issuing official shall not recommend the arrest of any person unless he or she has probable cause to support the arrest of that person. A unit commander shall not order the arrest of any person for whom he or she has not verified the existence of probable cause to arrest.

## Objective (b)

(b)   An assembly of persons will not be arrested simply because the group does not possess a permit. Such an arrest, if otherwise lawful, may only occur after an order to disperse has been clearly communicated three times in a manner that is reasonably calculated to be heard by each of the persons in the group and after reasonable opportunity to disperse has been afforded, to the extent that circumstances reasonably permit, without increasing the risk of injury to persons or property through the actions of a substantial number of the assembly of persons.

## PAO for Objective (b)

Objective (b) is satisfied by the inclusion in MPD's Mass Demonstration Handbook of the following PAO, coupled with MPD's compliance with this provision in responding to mass demonstrations.

An assembly of persons will not be arrested simply because the group does not possess a permit. Such an arrest may only occur after an order to disperse has been clearly communicated three times in a manner that is reasonably calculated to be heard by each of the persons in the group and after reasonable opportunity to disperse has been afforded, to the extent that circumstances reasonably permit,

---

How were the orders communicated?
When was each given?
Who gave each order to disperse?
Were audio and/or video recordings made of the warnings?
Is there another way to gain control of the situation?
Is there a viable alternative to a mass arrest?
Is dispersal of the crowd and arrest of a smaller number of persons for observed offenses as the group disperses reasonable?
Is extraction of a limited number of offenders for observed offenses reasonable?
Has the JOCC [Joint Operations Command Center] confirmed (or have you independently determined) that there are sufficient resources available to safely make number of arrests anticipated?
- Prisoner Control Activated
- Housing Space
- Feeding capabilities
- Arresting Officers (15-1 rule)
- Transportation

How do other circumstances weigh in favor of or against ordering a mass arrest?

without increasing the risk of injury to persons or property through the actions of a substantial number of the assembly of persons.

**Objective (c)**

(c)     All officers policing mass demonstrations and all officers guarding persons arrested at a mass demonstration shall be readily identifiable to demonstrators and arrestees.

**Measure and PAO for Objective (c)**

Objective (c) is satisfied by the MPD's Measure of reflecting the badge number of each officer by affixing, within 40 days, each officer's badge number to the front of that officer's helmet, immediately above the visor, and by MPD's inclusion in MPD's Mass Demonstration Handbook of the following provision, coupled with MPD's compliance with this provision and the helmet-numbering requirement in responding to mass demonstrations.

Each CDU Commander shall instruct such subordinate officials and officers as is appropriate under the circumstances that all uniformed, sworn personnel are to be inspected to ensure that they are properly wearing their badges and nameplates and that the badge numbers and names are not to be concealed, damaged, or tampered with, so as to interfere with the ability of the officer to be identified. When officers are directed to don CDU protective gear, including helmets, the officers are to affix their badge numbers to their helmets. Further, officers are prohibited from removing or tampering with their badges or nameplates and are required to verbally identify themselves when asked their identities.

**Objective (d)**

(c)     The official responsible for ordering or approving a mass arrest must have successfully completed training within the previous year regarding the circumstances under which a mass arrest is legally permitted. Such training shall include discussion of the proper response(s) to the arrest scenarios presented in *Dellums v. Powell* and *Abbate v. Ramsey*.

**Measure for Objective (d)**

Objective (d) is satisfied by the MPD's measure of providing to event officials who may reasonably be anticipated to command a situation presenting circumstances that may give rise to a mass arrest, training within the year preceding the event regarding the circumstances under which a mass arrest is legally permitted. Such training shall include discussion of the proper response(s) to the arrest scenarios presented in *Dellums v. Powell* and *Abbate v. Ramsey*.

8

**Objective (e)**

(e)     Persons arrested in a mass arrest shall, as soon as reasonably possible following their arrests, be informed of their rights to contact an attorney and/or family member or friend and their rights regarding citation release, post and forfeit or court appearance, and the meaning and consequences of each.

**POA's and Measures for Objective (e)**

Objective (e) is satisfied by MPD's measure of providing arrestees access to phones at processing centers from which the arrestees may place a call to contact an attorney and/or family member or friend, combined with the inclusion of the following provisions in MPD's Mass Demonstration Handbook, coupled with MPD's compliance with these provisions in responding to mass demonstrations.

e.1.    When all arrestees have boarded the transport vehicle, are safely seated and the transport vehicle has commenced its travel from the arrest location to the prisoner processing center, a member of the department is to read or play a recording of the text of the "Notification of Rights" form in a manner audible to all persons in the vehicle. Once at the prisoner-processing center, as arrestees are initially removed for processing the arrestee shall be provided a copy of the form to read. In addition, the text of the form is to be reflected on large signs that are to be placed conspicuously throughout the processing area.

The text of the "Notification of Rights" to be presented verbally, on large signs, and in the "Notification of Rights" form, will contain the following text:

e.2.    **Option 1 - YOU MAY ELECT TO "POST AND FORFEIT"**

If you choose to "Post and Forfeit," you will pay a certain amount of money and you will be released immediately and the charges against you will be dropped. You will never have to appear in court to answer the charges against you. You will also never have an opportunity to appear in court to contest the charges against you. You are required to prove your identity. A "post and forfeit" is not an admission of guilt, and you will have no criminal record on these charges. But you will have an arrest record on these charges.

If you are interested in the post and forfeit option, you will be provided with a list showing the amount you must pay depending on the charge for which you were arrested.

Your decision to post and forfeit is final unless you (or your attorney) file a "Motion To Set Aside Forfeiture" within 90 days of your arrest. Such a motion is not automatically granted. If it is granted, the charges against you will be reinstated and you will have to appear in court to answer them.

e.3.   **Option 2 - YOU MAY ELECT TO BE RELEASED ON CITATION ("CITE OUT")**

You are eligible for citation release if you are arrested for a misdemeanor offense that does not involve domestic violence and there are no outstanding warrants for your arrest. You are not required to post any amount of money for citation release but you are required to prove your identity.

If you elect citation release, you will be given a citation (similar to a traffic ticket), requiring you to appear in D.C. Superior Court to answer the charges against you. Failure to appear in court in response to the citation is a criminal offense. If you fail to appear in court on the date specified in the citation, a warrant will be issued for your arrest.

When you appear in court, the government may dismiss the charges against you or may proceed to trial. If the government chooses to proceed to trial, you will have a right to be represented by an attorney and if you cannot afford an attorney one will be provided for you. The government will bear the burden of proving beyond a reasonable doubt that you committed the offense with which you have been charged. If you are convicted, you will have a criminal record in addition to your arrest record. If you are acquitted, you will not have a criminal record but you will still have an arrest record unless you are later able to get it sealed or expunged by proving to the court that you did not commit any crime.

e.4.   **Option 3 - YOU MAY ELECT TO POST BOND ("POST AND TRIAL")**

If you are not eligible for citation release, you may still be eligible to post bond. If so, you may post a cash bond amount assigned to the charge, or a licensed bondsman may agree to post the bond for you in return for a 10% fee. You are required to prove your identity. You will be provided with a list showing the amount you must post depending on the charge for which you were arrested.

You will be required to appear in D.C. Superior Court to answer the charges against you. Failure to appear in court is a criminal offense. If you fail to appear in court on the date specified, a warrant will be issued for your arrest.

When you appear in court, the government may dismiss the charges against you or may proceed to trial. If the government chooses to proceed to trial, you will have a right to be represented by an attorney and if you cannot afford an attorney one will be provided for you. The government will bear the burden of proving beyond a reasonable doubt that you committed the offense with which you have been charged. If you are convicted, you will have a criminal record in addition to your arrest record. If you are acquitted, you will not have a criminal record but you will still have an arrest record unless you are later able to get it sealed or expunged by proving to the court that you did not commit any crime.

**Objective (f)**

(f)     The MPD shall, as expeditiously as possible, process any person arrested in a Mass Arrest to determine whether the person is eligible for release pursuant to a lawful release option and shall promptly release any person so eligible who opts for the release. The MPD shall also promptly release any person arrested in a Mass Arrest, who, it is subsequently determined, should not be charged with any offense.

**PAO for Objective (f)**

Objective (f) is satisfied by the inclusion in MPD's Mass Demonstration Handbook of the following PAO's, coupled with MPD's compliance with this provision in responding to mass demonstrations.

f.1.    The MPD shall, as expeditiously as possible, process any person arrested in a Mass Arrest to determine whether the person is eligible for release pursuant to a lawful release option and shall promptly release any person so eligible who opts for the release. The MPD shall also promptly release any person arrested in a Mass Arrest, who, it is subsequently determined, should not be charged with any offense.

**Objective (g)**

(g)     No upgrades or other maintenance of computer systems necessary for processing arrestees shall be scheduled to occur on days for which a plan for processing persons arrested in a mass arrest is in effect unless automated prisoner processing cannot be accomplished without performance of repairs or a remedial upgrade because of computer malfunction.

**POA for Objective (g)**

Objective (g) is satisfied by the inclusion in MPD's Mass Demonstration Handbook of the following provision, coupled with MPD's compliance with this provision in responding to mass demonstrations.

g.1.    No upgrades or other maintenance of computer systems necessary for processing arrestees shall be scheduled to occur or be performed on days for which a plan for processing persons arrested in a mass arrest is in effect unless automated prisoner processing cannot be accomplished without performance of repairs or a remedial upgrade because of computer malfunction. Where automated prisoner processing cannot be accomplished without performance of repairs or a remedial upgrade, the Prisoner Processing Center(s) shall switch to manual backup processing procedures to accomplish prisoner processing.

**Objective (h)**

(h)     Manual backup procedures for processing arrestees shall be available on days for which a plan for processing persons arrested in a mass arrest is in effect.

**POA for Objective (h)**

Objective (h) is satisfied by the inclusion in MPD's Mass Demonstration Handbook of the following provision, coupled with MPD's compliance with this provision in responding to mass demonstrations.

h.1.    Manual backup procedures for processing arrestees shall be available on days for which a plan for processing persons arrested in a mass arrest is in effect.

**Objective (i)**

(i)     MPD shall only use such restraints in the transporting, processing, and detention of persons as the Chief of Police or his designee determines to be reasonably necessary to maintain the safety of the arrestees and of MPD arresting, transporting, and/or processing personnel, and to prevent escape.

**POA for Objective (i)**

Objective (1) is satisfied by the inclusion in MPD's Mass Demonstration Handbook of the following provision, coupled with MPD's compliance with this provision in responding to mass demonstrations.

i.1.    MPD shall only use such restraints in the transporting, processing, and detention of persons as the Chief of Police or his designee determines to be reasonably necessary to maintain the safety of the arrestees and of MPD arresting, transporting, and/or processing personnel, and to prevent escape.

**Objective (k)**

(k)     Handcuffs and flexi-cuffs shall not be applied in a manner that is excessively tight.

**POA for Objective (k)**

Objective (k) is satisfied by the inclusion in MPD's Mass Demonstration Handbook of the following provision, coupled with MPD's compliance with this provision in responding to mass demonstrations.

k.1.    All arrestees are to be secured in accordance with MPD G.O. 502.01. Where flex-cuff restraints are used to secure an arrestee's hands or arms, the officer applying the flex-cuffs must always check restraint tightness. To avoid injuries that may be caused by overtightening the restraints, when applying the flex-cuff, the officer is to draw the strap up only until

12

the strap comes in contact with the arrestee's skin at all points. The officer is then to attempt to insert his or her index finger between the strap and the arrestee's wrist. If the officer cannot readily place his or her index finger between the strap and the arrestee's wrist, the officer is to immediately remove the flex-cuff and properly apply a new flex-cuff to prevent escape but no tighter.

k.2.   Officers are to give prompt attention to complaints that the cuffs are too tight. Even after using the precautionary measures indicated above to prevent overtightening of flex-cuffs, if the restrained person complains that the cuffs are too tight the officer should stop (if reasonably possible) and check the tightness of the cuffs. Even if the cuffs are properly applied the person could still have placed pressure on the cuffs or the person could have turned their hand within the cuff and caused constriction on part of the hand. If upon checking the cuffs the officer finds that the cuffs are too tight, the officer is to remove the flex-cuffs as soon as reasonably possible and replace them with flex-cuffs applied to fit properly. Further, if upon checking the officer finds that the flex-cuffs are at the appropriate tightness and there does not appear to be a problem, the officer need not loosen the cuffs. However, the officer should document in his/her report that upon complaint the cuffs were checked and found not to be too tight.

## Enforcement Provisions and Mechanisms

14.   Upon execution of this Settlement Agreement by all Plaintiffs and counsel for the Defendants, the parties will notify the Court of this Settlement. The parties will move the Court to dismiss this case with prejudice pursuant to the attached proposed Consent Order Dismissing Case With Prejudice And Retaining Jurisdiction For Purpose Of Enforcing Settlement Order under Fed. R. Civ. P. 41(a)(2) that provides for the Court to retain jurisdiction over this matter to make such orders as are necessary to remedy systemic material breaches of this Settlement Agreement pursuant to the procedures defined below or to entertain any of the motions to this Court described in paragraph 9. The Court will refer any motion brought pursuant to this Settlement Agreement to Magistrate Judge Alan Kay for final resolution pursuant to Fed. R. Civ. P. 73.

15.   Pursuant to this Settlement, the PAO's and Measures, when complied with and performed, satisfy the various Objectives. Accordingly, pursuant to this Settlement, any provision to be reflected in the MPD Mass Demonstration Handbook or other MPD publication as demonstrating MPD's obligations in satisfaction of an agreed-upon Objective, and every Measure constituting partial or complete satisfaction of an Objective, will remain in the Mass Demonstration Handbook and in effect for at least six months from the acceptance of this Settlement Offer. Following that six-month period, the District of Columbia will notify the Legal Director of the ACLU of the National Capitol Area (this individual being the "ACLU" for purposes of the provisions below) and the Chair of the D.C. Chapter of the National Lawyers Guild (this individual being the "Guild" for purposes of the provisions below) at least forty-five (45) days before adopting any changes to the language and/or measures provided for by the Settlement, and will confer with the ACLU and the Guild, as counsel for the Plaintiffs,

regarding any such changes. The District of Columbia, nevertheless, may adopt such changes without the consent or approval of the ACLU, the Guild, or the Plaintiffs. Neither the ACLU, the Guild, nor the Plaintiffs may unreasonably withhold their consent or approval, but the District Defendants may assert any such unreasonable withholding of consent only as a defense to an enforcement action under paragraph 16 below, and not as the basis for any affirmative claim for relief. In the event that a majority of the Plaintiffs object to such changes, they may seek relief pursuant to the enforcement mechanism set forth in the Enforcement and Sunset Provision in paragraph 16, below.

16.     The following Enforcement and Sunset Provision shall govern the enforcement of the Settlement:

> The Court shall retain jurisdiction over this matter to make such orders as are necessary to remedy systemic material breaches of this Settlement Agreement pursuant to the procedures defined below or to entertain any of the motions to this Court described in paragraph 9.

> The Plaintiffs, personally, or through Plaintiffs' attorneys, shall have standing to enforce the terms of this Settlement Agreement according to the procedures set out below.

> Before the Plaintiffs move the Court to enforce the Settlement, they shall give the District of Columbia written notice of and ninety (90) days to cure defendant's alleged systemic deficiencies that the Plaintiffs contend constitute a systemic material breach of the Settlement, unless the alleged material breach is the proposed adoption of a change or changes to the language and/or measures provided for by the Settlement, in which case the notice and cure period shall be forty-five (45) days. During the cure period, District Defendants shall have the opportunity to cure the deficiencies that the Plaintiffs contend constitute a material breach of the Settlement. The opportunity to cure shall also include good faith negotiations in face to face meetings between the District of Columbia and the Plaintiffs seeking enforcement of this Settlement or their attorneys to resolve their differences without the need for Court intervention. The Plaintiffs may not seek enforcement of the Settlement without satisfying the foregoing notice and cure provision.

> A "systemic material breach" is either (a) the occurrence of conduct prohibited by the Objectives caused by implementation and/or enforcement of an MPD policy, or the decision of a District policymaker, which violates one or more Objectives in a manner causing injury in fact to one or more persons, or (b) adoption of any changes to the agreed-upon PAO's or Measures that are not reasonably likely to comply with the respective Objective(s). The terms "policy" and "policymaker" shall be defined as those terms are used for purposes of 42 U.S.C. Section 1983 as contemplated by *Monell v. Department of Social Servs.*, 436 U.S. 658 (1978); *Jett v. Dallas Indep. School Dist.*, 491 U.S. 701 (1989); and *St. Louis v. Praprotnik*, 485 U.S. 112 (1988).

Plaintiffs understand that the MPD may include a provision in any PAO, Measure, General Order, Special Order, teletype, guideline or other written MPD directive that officers refrain from engaging demonstrators in conversation. Plaintiffs agree that such a provision would not constitute a violation of this Settlement Agreement. Defendants understand that Plaintiffs are not approving or endorsing such a provision.

The terms of this Settlement shall remain in effect for exactly three years following the date of the Plaintiffs' acceptance of this Offer, immediately after which time this agreement shall become null and void and the jurisdiction of the Court to enforce this Settlement will lapse except to the extent that a matter timely and properly presented to the Court pursuant to the Enforcement and Sunset Provision is still pending before the Court.

17. The Parties agree that multiple originals of this Settlement Agreement may be executed. The Parties' signatures need not appear on the same signature page.

ACCEPTED FOR PLAINTIFFS BY:

_____ on _____January 14_____, 2005
JULIE ABBATE

_____ on _____, 2005
ALEXIS BADEN-MAYER

_____ on _____, 2005
CHRISTOPHER DOWNES

_____ on _____, 2005
ADAM EIDINGER

_____ on _____, 2005
JOSEPH L. MAYER

_____ on _____, 2005
MINDI MORGAN MANCUELLO

and

Plaintiffs understand that the MPD may include a provision in any PAO, Measure, General Order, Special Order, teletype, guideline or other written MPD directive that officers refrain from engaging demonstrators in conversation. Plaintiffs agree that such a provision would not constitute a violation of this Settlement Agreement. Defendants understand that Plaintiffs are not approving or endorsing such a provision.

The terms of this Settlement shall remain in effect for exactly three years following the date of the Plaintiffs' acceptance of this Offer, immediately after which time this agreement shall become null and void and the jurisdiction of the Court to enforce this Settlement will lapse except to the extent that a matter timely and properly presented to the Court pursuant to the Enforcement and Sunset Provision is still pending before the Court.

17.    The Parties agree that multiple originals of this Settlement Agreement may be executed. The Parties' signatures need not appear on the same signature page.

ACCEPTED FOR PLAINTIFFS BY:

_____   on _____, 2005
**JULIE ABBATE**

_____   on ____1/14_____, 2005
**ALEXIS BADEN-MAYER**

_____   on _____, 2005
**CHRISTOPHER DOWNES**

_____   on ___1 — 14_____, 2005
**ADAM EIDINGER**

_____   on _____, 2005
**JOSEPH L. MAYER**

_____   on _____, 2005
**MINDI MORGAN MANCUELLO**

and

15

Plaintiffs understand that the MPD may include a provision in any PAO, Measure, General Order, Special Order, teletype, guideline or other written MPD directive that officers refrain from engaging demonstrators in conversation. Plaintiffs agree that such a provision would not constitute a violation of this Settlement Agreement. Defendants understand that Plaintiffs are not approving or endorsing such a provision.

The terms of this Settlement shall remain in effect for exactly three years following the date of the Plaintiffs' acceptance of this Offer, immediately after which time this agreement shall become null and void and the jurisdiction of the Court to enforce this Settlement will lapse except to the extent that a matter timely and properly presented to the Court pursuant to the Enforcement and Sunset Provision is still pending before the Court.

17.     The Parties agree that multiple originals of this Settlement Agreement may be executed. The Parties' signatures need not appear on the same signature page.

ACCEPTED FOR PLAINTIFFS BY:

_____ on _____, 2005
JULIE ABBATE

_____ on _____, 2005
ALEXIS BADEN-MAYER

_____ on _____ 1-17 _____, 2005
CHRISTOPHER DOWNES

_____ on _____, 2005
ADAM EIDINGER

_____ on _____, 2005
JOSEPH L. MAYER

_____ on _____, 2005
MINDI MORGAN MANCUELLO

and

15

Plaintiffs understand that the MPD may include a provision in any PAO, Measure, General Order, Special Order, teletype, guideline or other written MPD directive that officers refrain from engaging demonstrators in conversation. Plaintiffs agree that such a provision would not constitute a violation of this Settlement Agreement. Defendants understand that Plaintiffs are not approving or endorsing such a provision.

The terms of this Settlement shall remain in effect for exactly three years following the date of the Plaintiffs' acceptance of this Offer, immediately after which time this agreement shall become null and void and the jurisdiction of the Court to enforce this Settlement will lapse except to the extent that a matter timely and properly presented to the Court pursuant to the Enforcement and Sunset Provision is still pending before the Court.

17.    The Parties agree that multiple originals of this Settlement Agreement may be executed. The Parties' signatures need not appear on the same signature page.

ACCEPTED FOR PLAINTIFFS BY:

_____    on _____, 2005
JULIE ABBATE


_____    on _____, 2005
ALEXIS BADEN-MAYER


_____    on _____, 2005
CHRISTOPHER DOWNES


_____    on _____, 2005
ADAM EIDINGER


_____    on _____January 14_____, 2005
JOSEPH L. MAYER


_____    on _____, 2005
MINDI MORGAN MANCUELLO

and

15

Plaintiffs understand that the MPD may include a provision in any PAO, Measure, General Order, Special Order, teletype, guideline or other written MPD directive that officers refrain from engaging demonstrators in conversation. Plaintiffs agree that such a provision would not constitute a violation of this Settlement Agreement. Defendants understand that Plaintiffs are not approving or endorsing such a provision.

The terms of this Settlement shall remain in effect for exactly three years following the date of the Plaintiffs' acceptance of this Offer, immediately after which time this agreement shall become null and void and the jurisdiction of the Court to enforce this Settlement will lapse except to the extent that a matter timely and properly presented to the Court pursuant to the Enforcement and Sunset Provision is still pending before the Court.

17.    The Parties agree that multiple originals of this Settlement Agreement may be executed. The Parties' signatures need not appear on the same signature page.

ACCEPTED FOR PLAINTIFFS BY:

_____  on _____, 2005
JULIE ABBATE

_____  on _____, 2005
ALEXIS BADEN-MAYER

_____  on _____, 2005
CHRISTOPHER DOWNES

_____  on _____, 2005
ADAM EIDINGER

_____  on _____, 2005
JOSEPH L. MAYER

_____  on ____January 14_____, 2005
MINDI MORGAN MANCUELLO

and

15

_Tom Ulrich_                on _JANUARY 14_ , 2005
TOM ULRICH

ACCEPTED FOR DEFENDANTS BY:


_____   on _____ , 2005
Thomas L. Koger
Assistant Attorney General
Office of the Attorney General for the District of Columbia
Counsel for District of Columbia and Charles H. Ramsey


_____   on _____ , 2005
Robert E. Deso
Counsel for Peter J. Newsham

_____   on _____, 2005
TOM ULRICH

ACCEPTED FOR DEFENDANTS BY:


_____   on _____January 14,_____, 2005
Thomas L. Koger
Assistant Attorney General
Office of the Attorney General for the District of Columbia
Counsel for District of Columbia and Charles H. Ramsey


_____   on _____, 2005
Robert E. Deso
Counsel for Peter J. Newsham

16

_____   on _____, 2005
TOM ULRICH

ACCEPTED FOR DEFENDANTS BY:


_____   on _____, 2005
Thomas L. Koger
Assistant Attorney General
Office of the Attorney General for the District of Columbia
Counsel for District of Columbia and Charles H. Ramsey


_____   on _____January  14_____, 2005
Robert E. Deso
Counsel for Peter J. Newsham

16